[No. 2725–3. Division Three. March 13, 1979.]

WILMA B. VAN BUREN, ET AL, *Appellants*, v. KENNETH MILLER, ET AL, *Respondents.*

C. J. Rabideau, Prosecuting Attorney, and George E. Heidlebaugh, Deputy, for appellants.

Campbell, Johnston & Roach and Mike R. Johnston, for respondents.

ROE, J.—Defendants are farmers who have their lands designated as open spaces pursuant to RCW 84.34. The purpose of the act is to encourage owners to retain their land for farm use and to resist the trend to sell agricultural land for urban subdivision. The statute recognizes that if farmland adjacent to a city is assessed at its highest and best use upon comparable sales of adjacent farmland which is being used for urban purposes, the assessed value would be grossly disproportionate to the use. Thus, as to land which is in open spaces, the assessment is to be reached considering not comparable sales of similar land to real

estate developers, but rather by comparable farm leases made by other farmers of their land. RCW 84.34.065.[1] This was presumably done by the plaintiff county assessor in this case. In reaching her assessed valuation, she obtained information from leases of comparable lands. After defendants' land was assessed, they filed an appeal to the Board of

---

[1]RCW 84.34.065 states:

"The true and fair value of farm and agricultural land shall be determined by consideration of the earning or productive capacity of comparable lands from crops grown most typically in the area averaged over not less than five years, capitalized at indicative rates. The earning or productive capacity of farm and agricultural lands shall be the 'net cash rental', capitalized at a 'rate of interest' charged on long term loans secured by a mortgage on farm or agricultural land plus a component for property taxes.

"For the purposes of the above computation:

"(1) The term 'net cash rental' shall mean the average rental paid on an annual basis, in cash or its equivalent, for the land being appraised and other farm and agricultural land of similar quality and similarly situated that is available for lease for a period of at least three years to any reliable person without unreasonable restrictions on its use for production of agricultural crops. There shall be allowed as a deduction from the rental received or computed any costs of crop production charged against the landlord if the costs are such as are customarily paid by a landlord. If 'net cash rental' data is not available, the earning or productive capacity of farm and agricultural lands shall be determined by the cash value of typical or usual crops grown on land of similar quality and similarly situated averaged over not less than five years. Standard costs of production shall be allowed as a deduction from the cash value of the crops.

"The current 'net cash rental' or 'earning capacity' shall be determined by the assessor with the advice of the advisory committee as provided in RCW 84.34.145, and through a continuing study within his office, assisted by studies of the department of revenue. This net cash rental figure as it applies to any farm and agricultural land may be challenged before the same boards or authorities as would be the case with regard to assessed values on general property.

"(2) The term 'rate of interest' shall mean the rate of interest charged by the farm credit administration and other large financial institutions regularly making loans secured by farm and agricultural lands through mortgages or similar legal instruments, averaged over the immediate past five years.

"The 'rate of interest' shall be determined annually by the revenue department of the state of Washington, and such determination shall be published not later than January 1 of each year for use in that assessment year. The determination of the revenue department may be appealed to the state board of tax appeals by any owner of farm or agricultural land or the assessor of any county containing farm and agricultural land.

"(3) The 'component for property taxes' shall be a percentage equal to the estimated millage rate times the legal assessment ratio."

Equalization. To prepare for that hearing, the landowners demanded that the assessor furnish copies of any and all comparable leases used in establishing the assessment, or that the assessor permit copying of the leases, or if they were not readily available, that the assessor furnish the facts and information on which the comparisons were based and the addresses of all other properties used.

The assessor revealed the terms of the unrecorded leases, but refused to disclose (1) the farm location, or (2) the identities of the lessor and lessee, urging that the law mandates confidentiality. She claimed that an examination would substantially and irreparably damage a person or vital government function. She also claimed that the examination of the unrecorded lease ownership and location should be enjoined as clearly not in the public interest. Seeking to solidify her position, the assessor, as plaintiff, sued the defendants landowners Miller asking the court to enjoin them from obtaining the data. Millers answered and counterclaimed, demanding production of the unrecorded lease data. The court found that the exemption is clearly unnecessary to protect any individual's right of privacy or any vital governmental function. The trial court ordered the assessor to disclose the names of the persons and the locations of the lands involved in the leases used as comparables to assess defendants' land and dismissed her complaint. From that judgment the assessor has appealed.

RCW 84.40.340 provides authority for the assessor to be furnished records, accounts, and inventories by the taxpayer and further provides that:

> Any information or facts obtained pursuant to this section shall be used by the assessor only for the purpose of determining the assessed valuation of the *taxpayer's* property: . . .

(Italics ours.) It is further provided that this information

> shall not be disclosed without the permission of the taxpayer to any person other than public officers or employees whose duties relate to valuation of property for tax

purposes . . . and any violation of this secrecy provision shall constitute a gross misdemeanor.[2]

Under RCW 84.48.150[3] upon request the assessor must give to the taxpayer, who petitions the Board of Equalization for review of a tax claim and make available to the taxpayer a compilation of comparable sales utilized by the assessor in establishing her valuation. The statute also provides that if criteria other than comparable sales are used, the assessor shall furnish the taxpayer with such other factors and the addresses of such property used in making the determination of value. The purpose is to allow the taxpayer to test whether the supposedly comparable sales are really comparable. If those were the only statutes involved, there would be no problem, and the information would obviously be ordered disclosed. Nevertheless, RCW 84.40.020[4] providing for the listing and assessing of all real

---

[2]RCW 84.40.340 provides in part:

"Any information or facts obtained pursuant to this section shall be used by the assessor only for the purpose of determining the assessed valuation of the taxpayer's property: *Provided,* That such information or facts shall also be made available to the department of revenue upon request for the purpose of determining any sales or use tax liability with respect to personal property, and except in a court action pertaining to penalties imposed pursuant to RCW 84.40.130, to such sales or use taxes, or to the assessment or valuation for tax purposes of the property to which such information and facts relate, *shall not be disclosed without the permission of the taxpayer* to any person other than public officers or employees whose duties relate to valuation of property for tax purposes or to the imposition and collection of sales and use taxes, and any violation of this secrecy provision shall constitute a gross misdemeanor." (Italics ours.)

[3]RCW 84.48.150 provides in part:

"The assessor shall, upon the request of any taxpayer who petitions the board of equalization for review of a tax claim or valuation dispute, *make available to said taxpayer a compilation of comparable sales utilized* by the assessor in establishing such taxpayer's property valuation. If valuation criteria other than comparable sales were used, the assessor shall furnish the taxpayer with such other factors and the addresses of such other property used in making the determination of value." (Italics ours.)

[4]RCW 84.40.020 provides in part:

"All real property in this state subject to taxation shall be listed and assessed every year, with reference to its value on the first day of January of the year in which it is assessed. Such listing and all supporting documents and records shall

property in this state as of the first day of January provides that such listing and supporting documents and records shall be open to public inspection during the regular office hours of the assessor's office, "*Provided,* That confidential *income* data is exempted from public inspection pursuant to RCW 42.17.310."[5] (Italics ours.) That statute also provides that:

(1) The following shall be exempt from public inspection and copying:

. . .

(c) Information required of any taxpayer in connection with the assessment or collection of any tax if the disclosure of the information to other persons would violate the *taxpayer's right to privacy* or would result in unfair competitive disadvantage to such taxpayer.

(Italics ours.) Inspection or copying is exempt under the provisions of this section, but may be permitted if the superior court finds, after a hearing, that the exemption "is clearly unnecessary to protect any individual's right of privacy or any vital governmental function." RCW 42.17-.310(3). The Superior Court in this case so found and ordered disclosure. RCW 42.17.330[6] provides that the examination of any specific public record may be enjoined if the superior court "finds that such examination would

---

be open to public inspection during the regular office hours of the assessor's office: *Provided,* That *confidential income data is exempted* from public inspection pursuant to RCW 42.17.310. (Italics ours.)

[5]RCW 42.17.310 provides in part:
"(1) The following shall be exempt from public inspection and copying:
". . .
"(3) Inspection or copying of any specific records, exempt under the provisions of this section, may be permitted if the superior court in the county in which the record is maintained finds, after a hearing with notice thereof to every person in interest and the agency, that the exemption of such records, *is clearly unnecessary to protect any individual's right of privacy or any vital governmental function.*" (Italics ours.)

[6]RCW 42.17.330 states:
"The examination of any specific public record may be enjoined if, upon motion and affidavit, the superior court for the county in which the movant resides or in which the record is maintained, finds that such examination would

clearly not be in the public interest and would substantially and irreparably damage any person, . . ."

The assessor maintains that the unrecorded leases show certain sharecrop percentages, and that these are income to the landlord. It is the income of the landlord and the tenant and should be guarded as private information or confidential income data which is exempted from public inspection pursuant to RCW 42.17.310. The assessor urges that not only the income data would be disclosed, which is contrary to the specific provisions of the statute, but that it would be more difficult to obtain such information from the taxpayers. This would damage the tax collection process.

Thus, she claims that the injunction sought should have been granted. The assessor urges that the tax statutes should be construed together, that is, in pari materia. She strenuously urges that open spaces are a vital public interest in an increasingly crowded world and require a comparative income method of valuation. This demands third–party information without which there would be no feasible open–space program, and lessors would reveal income in order to make a correct assessment for comparisons only if it is kept confidential.

It is our purpose and duty to determine if the provisions of RCW 84.40.020 (providing that confidential income data is exempt from public inspection) can be harmonized with the public disclosure act, RCW 42.17.

In *Hearst Corp. v. Hoppe,* 90 Wn.2d 123, 580 P.2d 246 (1978), the assessor was ordered by the Supreme Court to disclose to the newspaper the records of those who contributed to his election campaign. Their names were determined from the reports made to the Public Disclosure Commission. In that case the newspaper did not seek any disclosure of income data. The court observed that the Washington Public Disclosure Act is a strongly worded mandate for broad disclosure of public records, that

---

clearly not be in the public interest and would substantially and irreparably damage any person, or would substantially and irreparably damage vital governmental functions."

full access to information concerning the conduct of government on every level must be assured as a fundamental and necessary precondition to the sound governance of a free society." RCW 42.17.010(11). It further declares that [the act] shall be liberally construed to promote . . . full access to public records so as to assure continuing public confidence . . . governmental processes . . . Declarations of policy in an act, although without operative force in and of themselves, serve as an important guide in determining the intended effect of the operative sections.

*Hearst Corp. v. Hoppe, supra* at 127–28, citing *Hartman v. State Game Comm'n,* 85 Wn.2d 176, 179, 532 P.2d 614 (1975). Declarations of policy requiring liberal construction are a "command that the coverage of the act's provisions be 'liberally construed' . . . that its exceptions be narrowly confined." *Mead School Dist. 354 v. Mead Educ. Ass'n,* 85 Wn.2d 140, 145, 530 P.2d 302 (1975). In *Hearst Corp. v. Hoppe, supra,* the court rejected the approach that interpretation of the act should be left to those at whom it was aimed, as this would be the most direct course to its devitalization. Rather, the court must make the determination as to the scope of disclosure and exemption provisions.

The assessor in the case at bench emphasizes that the Hearst opinion mentions that no income data was sought and that RCW 42.17.310(1)(c) establishes exemption for information required of any taxpayer in connection with the assessment or collection of any tax if the disclosure of the information to other persons would violate the taxpayer's right of privacy and would result in unfair competitive disadvantage to such taxpayer.

██ ██ Right of privacy is not defined in the statute, but RCW 42.17.260(1) provides that the agency will make the record available for public inspection, except it may prevent an unreasonable invasion of personal privacy by deleting identifying details. To determine what right of privacy was intended, the court referred to Restatement (Second) of Torts § 652(d), at 383 (1977), which severely limits the

right of privacy and includes only that which would be highly offensive to a reasonable person and is not a legitimate concern to the public. This would include family close personal matters, unpleasant, disgraceful or humiliating illnesses, intimate letters, etc., things that a person would rather forget; in effect, matters which would give rise to an action in tort. That standard of the Restatement was adopted in *Hearst Corp. v. Hoppe, supra* at 136.

> One established principle . . . is that an agency's promise of confidentiality or privacy is not adequate to establish the nondisclosability of information; promises cannot override the requirements of the disclosure law.

*Hearst Corp. v. Hoppe, supra* at 137. The court commented that the federal standard reflects the same considerations applicable to privacy expressed in the Restatement and involves a balancing test, weighing the general public interest in access to governmental information against the specific privacy interest asserted. The balance is to be tilted in favor of disclosure. The court stated at page 138:

> There is nothing in the materials which the trial judge ordered disclosed that reveals intimate details of anyone's private life in the Restatement sense. Thus, the portions of the folios ordered disclosed fail to violate any right to privacy.

It did observe, however, that RCW 84.40.020 seeks to interpret RCW 42.17.310 as it relates to real property listing and assessment records. The two acts were enacted within a short time of each other and relate to one another. The court stated further at page 138:

> [W]e will "read the sections as constituting one law to the end that a harmonious total schema which maintains the integrity of both is derived."

Thus, they are read in pari materia, which means the statutes are construed together (as equal stuff).

We find the disclosure of the names of the lessors and lessees would not violate any right of privacy. The right of privacy protected is a much more personal one than is present in this case. Certainly the names are known to at

least three parties, the lessor, lessee, and the assessor and her assistants. This is hardly privacy in a personal sense. Normally, privacy is lost in disclosure to another person. Nor can the assessor carve out an enclave of privilege by promising confidentiality. Although there may be rights of the public involved on both sides of this question, nevertheless, we feel that the balance is in favor of disclosing the information used in the assessor's office to show consistency, no favoritism, and fairness to the person against whom it is used.

There is no showing that the disclosure would result in any competitive disadvantage to any of the taxpayers. As to income, it must be observed that percentage crop sharing is not directly translatable as income. Income would depend upon the amount of crops produced, the expenses incurred, price received, transportation, and probably other factors. Actually, no disclosure of "income" as such was sought. In viewing the policy for open disclosure, the judgment of the trial court must be affirmed.

In reaching this conclusion we are not unmindful of the Attorney General Opinion Nov. 9, 1977, which discusses this problem and reaches the same result. In answer to the question of whether a county assessor who has utilized one or more leases of comparable lands to establish the net cash rental for certain farm and agricultural land under RCW 84.34.065 may be required by the owner to permit the inspection of the contents of the leases, the opinion was in the affirmative. According to the Attorney General's letter, the assessor must furnish the address of the property covered by the lease and give the taxpayer the information he needs to test out whether the supposedly comparable sale or lease is really comparable. The opinion is that the later law (Initiative No. 276), RCW 42.17, grants to a taxpayer an unqualified right to be furnished with any information contained in comparable sales or leases which a county assessor has used for the purpose of valuing the taxpayer's property. This is interpreted by the Attorney General's office that the legislature has, by its later affirmative act,

negated any basis for invoking either right of privacy or a vital governmental interest objection under RCW 42.17.260. RCW 84.48.150.

The court weighed the competing interests under the statute and came down on the side of the taxpayer. We agree. The judgment is affirmed.

MUNSON and McINTURFF, JJ., concur.

Reconsideration denied April 19, 1979.

Review denied by Supreme Court August 22, 1979.