423 So.2d 426 (1982)
CAPE PUBLICATIONS, INC., and Scott Maclay, Appellants/Cross-Appellees,
v.
Hilda BRIDGES, Appellee/Cross-Appellant.
Nos. 81-1552, 81-1566.
District Court of Appeal of Florida, Fifth District.
November 24, 1982.
Rehearing Denied December 16, 1982.
John B. McCrory and Robert C. Bernius, of Nixon, Hargrave, Devans & Doyle, Rochester, N.Y., and Joe Teague Caruso and Jack A. Kirschenbaum, of Wolfe, Kirschenbaum, Caruso, Mosley & Kabboord, P.A., Cocoa Beach, for appellants/cross-appellees.
Edward A. Perse, of Horton, Perse & Ginsberg, Miami, and Nance, Cacciatore & Sisseron, Melbourne, for appellee/cross-appellant.
DAUKSCH, Judge.
Appellee Bridges brought suit against appellants on the theories of invasion of privacy, intentional infliction of emotional distress, *427 and trespass,[1] alleging that appellant's conduct in publishing a photograph of appellee was actionable. The news story reported the abduction of appellee by her estranged husband who came to her workplace and at gunpoint forced her to go with him to their former apartment. The police were alerted and after surrounding the apartment began efforts to free appellee. Her husband forced her to disrobe in an effort to prevent her escape. Her life was obviously in danger. This is a typical exciting emotion-packed drama to which news-people, and others, are attracted. It is a newsworthy story. Upon hearing a gunshot, the police stormed the apartment and rushed appellee outside to safety. Appellee was clutching a dish towel to her body in order to conceal her nudity as she was escorted to the police car in full public view. The photograph revealed little more than could be seen had appellee been wearing a bikini and somewhat less than some bathing suits seen on the beaches. There were other more revealing photographs taken which were not published. The published photograph is more a depiction of grief, fright, emotional tension and flight than it is an appeal to other sensual appetites. The jury awarded appellee $1,000.00 in compensatory damages and $9,000.00 in punitive damages.
It is settled law in Florida that the right of privacy does not necessarily protect a person against the publication of his name or photograph in connection with the dissemination of legitimate news items or other matters of public interest. Jacova v. Southern Radio and Television Company, 83 So.2d 34 (Fla. 1955); Cason v. Baskin, 155 Fla. 198, 20 So.2d 243 (1944), on appeal after remand, 159 Fla. 31, 30 So.2d 635; Harms v. Miami Daily News, Inc., 127 So.2d 715 (Fla. 3d DCA 1961). At some point the public interest in obtaining information becomes dominant over the individual's right of privacy. "It has been said that the truth may be spoken, written or printed about all matters of a private nature in which the public has a legitimate interest." Cason v. Baskin, 20 So.2d at 251. Within the scope of legitimate public concern are matters customarily regarded as "news."[2]
In determining the extent of the right of privacy, the standard by which the right is measured is based upon a concept of the person of reasonable sensibility; the hypersensitive individual will not be protected.
An invasion of the right of privacy occurs not with the mere publication of a photograph, but occurs when a photograph is published where the publisher should have known that its publication would offend the sensibilities of a normal person, and whether there has been such an offense invasion of privacy is to some extent a question of law.

Jacova at 83 So.2d 36, 39.
Although publication of the photograph, which won industry awards, could be considered by some to be in bad taste,[3] the law in Florida seems settled that where one becomes an actor in an occurrence of public interest, it is not an invasion of her right to privacy to publish her photograph with an account of such occurrence.[4]Jacova, 83 *428 So.2d at 36. Just because the story and the photograph may be embarrassing or distressful to the plaintiff does not mean the newspaper cannot publish what is otherwise newsworthy.
Likewise, the publication of the story and photograph does not meet the test of outrageousness as required for the independent tort of intentional infliction of emotional distress. See Food Fair, Inc. v. Anderson, 382 So.2d 150, 153 (Fla. 5th DCA 1980).
Courts should be reluctant to interfere with a newspaper's privilege to publish news in the public interest. The trial court erred in denying appellant's Motions for Directed Verdict and Judgment Notwithstanding the Verdict, so we must reverse the judgment.
REVERSED.
ORFINGER, C.J., and FRANK D. UPCHURCH, Jr., J., concur.
NOTES
[1] The trespass claim was dismissed during trial.
[2] Authorized publicity, customarily regarded as "news," includes publications concerning crimes, arrests, police raids, suicides, marriages, divorces, accidents, fires, catastrophes of nature, narcotics related deaths, rare diseases, etc. and many other matters of genuine popular appeal. Restatement of (Second) Torts, § 652D Comment G (1977).
[3] See Neff v. Time, Inc., 406 F. Supp. 858, 860 (W.D.Pa. 1976) wherein the court noted:

It seems to us that art directors and editors should hesitate to deliberately publish a picture which most likely would be offensive and cause embarrassment to the subject when many other pictures of the same variety are available. Notwithstanding, "[t]he courts are not concerned with establishing canons of good taste for the press or the public." (citation omitted).
[4] See Restatement of (Second) Torts, § 625D Comment F (1977), which explains that such accounts are not an invasion of privacy to:

[t]hose who are the victims of crime or are so unfortunate as to be present when it is committed, as well as those who are the victims of catastrophes or accidents or are involved in judicial proceedings or other events that attract public attention. These persons are regarded as properly subject to the public interest, and publishers are permitted to satisfy the curiosity of the public as to its heroes, leaders, villains, and victims, and those who are closely associated with them. As in the case of the voluntary public figure, the authorized publicity is not limited to the event that itself arouses the public interest and to some reasonable extent includes publicity given to facts about the individual that would otherwise be purely private.