[No. 17201-8-I.   Division One.   June 8, 1987.]

SEATTLE FIRE FIGHTERS UNION, LOCAL NO. 27, ET AL, *Respondents*, v. ROBERT L. HOLLISTER, JR., ET AL, *Appellants*.

130

*Kenneth O. Eikenberry, Attorney General,* and *Kathy Nolan* and *Thomas G. Holcomb, Assistants; David F. Stobaugh, Stephen K. Strong,* and *Bendich, Stobaugh & Strong,* for appellants.

*James E. Kennedy* and *Kennedy, Schuck, Harris & Miller, P.S.,* for respondents.

COLEMAN, J.—Dr. Robert L. Hollister, Jr., Director of the Department of Retirement Systems; Mindy S. Trossman; and the Better Government Association appeal from an order enjoining the retirement system from releasing disability records of five retired fire fighters and police officers. We reverse and remand.

In 1979, as part of a nationwide study of police and fire fighter disability retirement systems, Mindy Trossman requested the disability retirement records of 38 retired police and fire personnel. Trossman was a project coordina-

tor of an organization known as the Better Government Association (BGA). Dr. Robert L. Hollister, Jr., informed Trossman that 12 of the 38 individuals were not on disability retirement; therefore, they were not within its request. He said that he would release the other 26 files only after giving notice to the affected individuals. He then sent a letter to the 26 retirees informing them that he would release their files under the public disclosure act within 10 days of receipt of his letter unless he was enjoined by a court order.

On November 20, 1979, the Seattle fire fighters' union brought an action to enjoin Hollister and the BGA from releasing the requested records under RCW 42.17.330, the public disclosure act. On December 4, 1979, the court entered an order temporarily enjoining Hollister and the BGA from releasing any information. Though named in the original complaint, neither Trossman nor the BGA was served with the original complaint or the temporary restraining order. Hollister received notice but did not appear.

After the union obtained the preliminary injunction, it mailed to Trossman copies of all of the pleadings and the injunction and asked her to acknowledge service. Upon receipt, the BGA sought to dissolve the temporary injunction and obtain reasonable attorney's fees and damages.

On February 15, 1980, the court dissolved the temporary injunction, except as to four retired fire fighters and two retired police officers. The court also ordered the six disability files sealed and released only to the parties' counsel so the contents could be summarized and briefed. On August 14, 1984, the court issued an order permanently enjoining Hollister and the BGA from releasing the files of the five retired employees. (One employee asked that the action be dismissed and permitted his file disclosed.) Hollister, Trossman, and the BGA appeal.

The public disclosure act establishes an affirmative duty to disclose public records unless they fall within specific exemptions. RCW 42.17.010 *et. seq.; Hearst Corp. v.*

*Hoppe,* 90 Wn.2d 123, 130, 580 P.2d 246 (1978). The mandate for disclosure must be liberally construed and the exemptions narrowly confined. *Hearst,* at 128; RCW 42.17-.010. Specific exemptions are set forth in former RCW 42.17.310(1)(a)–(p). The statute further provides that such exemptions are inapplicable if the agency can delete any information that would violate personal privacy or vital government interests from the records prior to release.

> (2) Except for information described in subsection (1)(c)(i) of this section and confidential income data exempted from public inspection pursuant to RCW 84.40.020, the exemptions of this section are inapplicable to the extent that information, the disclosure of which would violate personal privacy or vital governmental interest, can be deleted from the specific records sought. No exemption may be construed to permit the nondisclosure of statistical information not descriptive of any readily identifiable person or persons.

RCW 42.17.310(2). The statute also requires deletion of information that might constitute an unreasonable invasion of privacy for records that are not subject to exemption.

> (1) Each agency, in accordance with published rules, shall make available for public inspection and copying all public records. To the extent required to prevent an unreasonable invasion of personal privacy, an agency shall delete identifying details when it makes available or publishes any public record; however, in each case, the justification for the deletion shall be explained fully in writing.

RCW 42.17.260(1). Thus, we must determine (1) whether the requested records are exempt from disclosure; (2) if they are exempt, whether personal information can be deleted from them so they might still be released; or (3) if the records are not exempt, whether information that could be an unreasonable invasion of privacy must be deleted from the records before they may be released.

The trial court found that the retirement disability records of the five plaintiffs were subject to exemption under RCW 42.17.310(1)(a).

(1) The following are exempt from public inspection and copying:

(a) Personal information in any files maintained for students in public schools, patients or clients of public institutions or public health agencies, welfare recipients, prisoners, probationers, or parolees.

RCW 42.17.310(1)(a). The trial court concluded that the plaintiffs were clients of a public institution. Only by very broad interpretation could the exemption for client records of a public institution be found to fit the retirees' disability records. A "client" is defined as a person served by a public institution. *Webster's Third New International Dictionary* 422 (1971). An "institution" is a society or a foundation of a public character. *Webster's Third New International Dictionary* 1171 (1971). Arguably, the retirees could be considered clients of the retirement system; however, the system is not a "society" or a "public foundation." Rather, the retirement system was created as an employee benefit for a group of public employees and is not public in the sense that the general public utilizes its services.

Furthermore, the other types of records listed in the exemption provide insight into the interpretation to be given to the broader term "client records of public institutions." These other records include the records of public school students, prisoners or former prisoners, welfare recipients, and patients of public health facilities. These other records relate to agencies operated by the government for the public welfare. The retirees' disability records are not similar to the other records specified in this exemption.

Appellants concede that the records could be subject to the public employee records exemption. That exemption states:

(1) The following are exempt from public inspection and copying:

. . . .

(b) Personal information in files maintained for employees, appointees, or elected officials of any public agency to the extent that disclosure would violate their right to privacy.

RCW 42.17.310(1)(b).

The trial court determined that the exemption for public employee records applies only to records held by an agency which relate to that agency's current employees. Thus, the court reasoned that because retired fire fighters and police officers are not current employees of any state agency, the disability records cannot be exempt under the provisions for public employee records. No cases have been found in which an appellate court in Washington has determined whether a retired employee is a public employee within the meaning of this statute. The legislative intent to protect the privacy rights of public employees would, however, logically lead to the conclusion that the employee's exemption does not terminate upon retirement. Therefore, even though the individuals who are the subject of these records have retired, they are still protected by the public employee exemption of RCW 42.17.310(1)(b).

The trial court also concluded that "agency" in RCW 42.17.310(1)(b) refers to the agency that maintains the files. Because the retirees were never employees of the Department of Retirement Systems, the court reasoned that the public employee exemption did not apply. We disagree. To so hold would be to preclude virtually all state employee records from exemption since the agency that holds the records is usually not the employing agency but an agency like the State Department of Personnel. Thus, the records in dispute are subject to the public employee exemption.

The public employee's records exemption is narrowly drawn, however, to include only those disclosures that would violate the right to privacy. Therefore, even though the requested records are subject to the public employee exemption, we must determine if release of the records would violate the personal privacy of respondents.

The privacy right protected by the public disclosure act was described in *Hearst Corp. v. Hoppe,* 90 Wn.2d 123, 580 P.2d 246 (1978), as that information which a reasonable person would find highly offensive to disclose and which is

not of public interest.

Inasmuch as the statute contains no definition of the term, there is a presumption that the legislature intended the right of privacy to mean what it meant at common law. *New York Life Ins. Co. v. Jones,* 86 Wn.2d 44, 47, 541 P.2d 989 (1975). The most applicable privacy right would appear to be that expressed in tort law. Tort liability for invasions of privacy by public disclosure of private facts is set forth in Restatement (Second) of Torts § 652D, at 383 (1977): "One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person and (b) is not of legitimate concern to the public." The comment to the Restatement illustrates what nature of facts are protected by this right to privacy.

Every individual has some phases of his life and his activities and some facts about himself that he does not expose to the public eye, but keeps entirely to himself or at most reveals only to his family or to close personal friends. Sexual relations, for example, are normally entirely private matters, as are family quarrels, *many unpleasant or disgraceful or humiliating illnesses,* most intimate personal letters, most details of a man's life in his home, and some of his past history that he would rather forget. When these intimate details of his life are spread before the public gaze in a manner highly offensive to the ordinary reasonable man, there is an actionable invasion of his privacy, unless the matter is one of legitimate public interest.

Restatement, *supra* at 386.

The standard and analysis of the Restatement appear well suited to fill the definitional void of RCW 42.17-.310(1)(c). In addition to the fact that the tort right is the most widely recognized and established definition of the legal right to privacy, the context in which that right has emerged and the considerations surrounding its development are uniquely analogous to the values and interests which subsection (1)(c) appears designed to protect. We therefore adopt the Restatement standard as the controlling one.

(Italics ours.) *Hearst,* at 135–36. Inconvenience or embar-

rassment resulting from the fact of publicity alone does not violate the right of privacy contemplated by the privacy exemption of the statute. *See Columbian Pub'g Co. v. Vancouver*, 36 Wn. App. 25, 30, 671 P.2d 280 (1983). The statute itself expressly states that release shall not be precluded due to inconvenience or embarrassment.[1] The files requested in this case as summarized in the sealed briefs contain information pertaining to back injury, asthma, emphysema, ulcers, and possible arterial problems. None of these are unpleasant, disgraceful, or humiliating illnesses. They are not the kinds of illnesses that would be highly offensive to reasonable people. Thus, respondents' records do not meet the *Hearst* test for a violation of the right to privacy and are not exempt under RCW 42.17-.310(1)(b), the public employee exemption.

The second half of the *Hearst* privacy test is whether the records are of legitimate concern to the public. *Hearst,* at 136. Respondents argue that because the BGA has not produced the report for which it requested the retirement disability records, the release of this information is not in the public interest. Respondents contend that the BGA's intention was merely to scandalize and vilify the recipients by cooperating with NBC to produce a prime time special on disability retirement programs.[2] Thus, respondents contend that BGA has not established a public interest in

---

[1]RCW 42.17.340(2) provides:

"Judicial review of all agency actions taken or challenged under RCW 42.17-.250 through 42.17.320 shall be de novo. Courts shall take into account the policy of this chapter that free and open examination of public records is in the public interest, even though such examination may cause inconvenience or embarrassment to public officials or others. Courts may examine any record in camera in any proceeding brought under this section."

[2]At oral argument, respondents cited *In re Rosier,* 105 Wn.2d 606, 717 P.2d 1353 (1986) as authority for the agency to consider the purpose for which the information was sought and argued that the court should require them to do so. The exception to the rule that an agency may not inquire into the proposed use for the information was narrowly drawn to apply to law enforcement agencies seeking data. *Rosier,* at 614. Moreover, the 1987 amendments to the public disclosure act prohibit agencies from inquiring into the purpose for the request

obtaining these records. The burden of proof, however, is on the party who wishes to exempt records from disclosure. *See In re Rosier,* 105 Wn.2d 606, 616, 717 P.2d 1353 (1986); *Hearst,* at 130; and *Columbian,* at 29.[3] Therefore, respondents must establish that there is no legitimate public interest in the release of this information. To the contrary, the record indicates that the administration of disability retirement programs is of legitimate concern to the public.

THE COURT: Nobody questions that everybody has a public interest in the pension systems and their problems. I don't think Mr. Kennedy says there is no interest in it. I can take judicial notice that there's intense public interest in all pension systems both by those who help to get them sometime and by the taxpayers who are concerned about the cost. There's no question about the cost.

■ Since the records at issue are not exempt from disclosure, we must next determine whether RCW 42.17.260(1) requires deletion of identifying details if release of the records would cause an unreasonable invasion of personal privacy. "Privacy" in this provision has not been interpreted by any appellate court in this state; however the *Hearst* definition of privacy applies since words retain the same meaning throughout a statute. *DeGrief v. Seattle,* 50 Wn.2d 1, 11, 297 P.2d 940 (1956). Thus, deletion of identi-

---

except as necessary to determine if exemptions apply, and they reaffirm the Legislature's intent that the *Hearst* test apply. Laws of 1987, ch. 403.

[3]While we recognize the fact difference between these cases and the instant case, the basis for assigning the burden of proof rests on the same principle. In all three cases, the requesting party sought judicial review of agency refusal to release records. Thus, the *Hearst* court applied RCW 42.17.340(1) which provides that "[t]he burden of proof shall be on the agency to establish that refusal to permit public inspection and copying is required." *See Hearst,* at 130. In this case, the party seeking exemption from disclosure is not the agency but the party seeking judicial review. Therefore, RCW 42.17.340(1) does not apply. The principle, however, that agencies have a positive duty to disclose (discussed *supra*) provides a logical basis for the rule that the party seeking exemption, agency or individual, has the burden of proof. Moreover, respondents in this case have the burden of proof as plaintiffs in an injunction action. *See Tyler Pipe Indus., Inc. v. Department of Rev.,* 96 Wn.2d 785, 792, 638 P.2d 1213 (1982).

fying information is not required by the statute since none of the materials meet the *Hearst* test for violation of privacy. For the reasons stated, we conclude that the trial court erred in granting a permanent injunction.

We next examine appellants' request for attorney's fees at trial and on appeal.

■ Attorney's fees are recoverable as a cost of dissolving a wrongfully issued temporary injunction or restraining order. *Alderwood Assocs. v. Washington Envtl. Coun.*, 96 Wn.2d 230, 247, 635 P.2d 108 (1981). In *Alderwood,* our Supreme Court reversed the trial court's temporary restraining order because it violated the defendant's constitutional right to free speech. *Alderwood,* at 246. In *Cecil v. Dominy,* 69 Wn.2d 289, 418 P.2d 233 (1966), our Supreme Court discussed the rationale for awarding attorney's fees to parties who prevail in dissolving a wrongful injunction.

> Because the trial on the merits had for its sole purpose a determination of whether the injunction should stand or fall, and was the only procedure then available to the party enjoined to bring about dissolution of the temporary injunction, the case comes within the rule that a reasonable attorney's fee reasonably incurred in procuring the dissolution of an injunction wrongfully issued represents damages suffered from the injunction.

*Cecil,* at 291–92. Because the sole purpose of the proceedings below and on appeal was the dissolution of wrongful injunctions, appellants are entitled to attorney's fees reasonably expended in the proceedings below and on appeal.[4]

The judgment of the trial court is reversed and remanded with instructions to dissolve the permanent injunction and to determine attorney's fees pursuant to RAP 18.1(e). The amount of recovery is not limited to the $200 bond amount since the award of attorney's fees is not based on the bond

---

[4]Since respondents' original complaint and the preliminary injunction named Mindy S. Trossman d/b/a Better Government Association as defendant and the temporary restraining order and the preliminary injunction enjoined the defendants from releasing information, Trossman and the BGA are parties to the action entitled to attorney's fees. Hollister and the Department of Retirement Systems did not request attorney's fees.

statute, but is based on a rule of equity. *See Ritchie v. Markley,* 23 Wn. App. 569, 575, 597 P.2d 449 (1979); *see also James v. Cannell,* 135 Wash. 80, 85–86, 237 P. 8 (1925), *adhered to on reh'g,* 139 Wash. 702, 246 P. 304 (1926) (though not allowed in garnishment bond statute, court awarded attorney's fees in wrongful garnishment because right to fees in wrongful attachment, garnishment, and injunction exists independent of bond statutes). Moreover, Trossman and the BGA moved to raise the bond amount after it was set in an ex parte proceeding, but the motion was denied. *Cf. Venegas v. United Farm Workers,* 15 Wn. App. 858, 863 n.12, 552 P.2d 210 (1976) (defendant did not move to increase bond; therefore, recovery was limited by bond amount); *White v. Wilhelm,* 34 Wn. App. 763, 774–75, 665 P.2d 407, *review denied,* 100 Wn.2d 1025 (1983) (attorney fees awarded though plaintiffs failed to post bond).

Reversed and remanded for further proceedings consistent with this opinion.

RINGOLD, A.C.J., and WILLIAMS, J., concur.

Review denied by Supreme Court September 1, 1987.