SPOKANE POLICE GUILD, ET AL, *Appellants*, v. THE LIQUOR
CONTROL BOARD, ET AL, *Respondents*, THE
CITY OF SPOKANE, *Appellant*.

*Kain & Snow,* by *Gregory G. Staeheli,* for appellants Spokane Police Guild, et al.

*James C. Sloane, City Attorney,* and *Rocco N. Treppiedi, Assistant,* for appellant Spokane.

*Kenneth O. Eikenberry, Attorney General,* and *Paul D. Solomon, Assistant,* for respondent State.

*Witherspoon, Kelley, Davenport & Toole, P.S.,* by *Michael D. Currin* and *Duane M. Swinton,* for respondent Cowles Publishing Co.

ANDERSEN, J.—

FACTS OF CASE

This is an appeal from an order of the Superior Court for Spokane County wherein the court declined to enjoin the Washington State Liquor Control Board from releasing an investigative report to the public and news media. We affirm.

On or about March 19, 1986, a party was held on the Spokane Police Guild Club premises. These were premises licensed by the Washington State Liquor Control Board (Liquor Board). The party has been variously referred to as a bachelor party, stag show and strip show. The party was, in any event, given for a prospective bridegroom by his brother. A dancer performed at the party in a manner which, as it was subsequently determined, violated Liquor Board regulations. Forty or more people were in attendance. Following an investigation by an investigator for the Liquor Board, the club's liquor license was suspended for 21 days.

A reporter for the Spokesman Review and Spokane Chronicle newspapers requested a copy of the Liquor Board's investigative report. The Liquor Board ultimately determined that it would release its full report on the incident. This suit was thereupon commenced by the Spokane Police Guild to enjoin the release of the records. The publisher of the newspapers, Cowles Publishing Company, and the City of Spokane were permitted to intervene in the suit.

Following consideration of affidavits, briefs and arguments, and after reviewing the investigative report in camera, the trial court filed its memorandum decision stating in part as follows:

> Nothing this court can do will ever erase the fact that this regrettable incident occurred. And probably nothing the news media can do from here on out will really be considered a benefit to this community. But it seems obvious to this court that the full story must be made public, including the names of persons involved.

The trial court then entered an order denying the injunction and ordering that a complete and unedited copy of the investigative report be disclosed. An appeal was taken to the Court of Appeals and the trial court stayed disclosure pending appeal. The Court of Appeals, in turn, certified the appeal to this court and we accepted review.[1]

The appeal presents one primary issue.

### ISSUE

Should the Liquor Board's report of its investigation of liquor law violations at a party held on the premises of one of its licensees be exempt from disclosure under the state freedom of information act?

### DECISION

CONCLUSION. We hold that the trial court properly concluded that the records in question were not exempt from disclosure and that a complete and unedited copy of the

---

[1] RCW 2.06.030.

Liquor Board's report should be made available to the public and news media.

This suit was brought under the state freedom of information act, RCW 42.17.250–.340 (the act). The parties concede that the Liquor Board's investigative report of the event in question is a public record. Thus, we turn to the act for guidance.

The act originally became law in 1972 as a part of Initiative Measure 276, adopted by a direct vote of the people. The purpose and policy are as follows.[2] It is a strongly worded mandate for broad disclosure of public records. While mindful of the right of individuals to privacy and of the desirability of the efficient administration of government, full access to information concerning the conduct of government on every level must be assured as a fundamental and necessary precondition to the sound governance of a free society. The provisions of the act are to be liberally construed to promote full access to public records so as to assure continuing public confidence in governmental processes, and to assure that the public interest will be fully protected.

Achieving an informed citizenry is a goal sometimes counterpoised against other important societal aims. Indeed, as the act recognizes, society's interest in an open government can conflict with its interest in protecting personal privacy rights and with the public need for preserving the confidentiality of criminal investigatory matters, among other concerns. Though tensions among these competing interests are characteristic of a democratic society, their resolution lies in providing a workable formula which encompasses, balances and appropriately protects all interests, while placing emphasis on responsible disclosure. It is

---

[2]*Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 127–28, 580 P.2d 246 (1978); RCW 42.17.010(11).

this task of accommodating opposing concerns, with disclosure as the primary objective, that the state freedom of information act seeks to accomplish.[3]

Under the act, judicial intervention in the release of public records can come about in one of two ways.

First, the courts can become involved if the agency refuses to provide the requested public records, or attempts to edit them in a fashion deemed unacceptable by the requester. In that event, the requester may proceed under RCW 42.17.340 and obtain judicial review of the agency's action refusing disclosure. Most reported appellate decisions involving the act, including our recent decision in *Cowles Pub'g Co. v. State Patrol*, 109 Wn.2d 712, 748 P.2d 597 (1988), have dealt with this kind of an action.[4] In such a proceeding, the following rules apply: the agency has the burden of proving that the records should be exempt from disclosure;[5] judicial review of the agency decision is de novo;[6] and a party successfully obtaining disclosure over agency objection may recover costs including reasonable attorneys' fees.[7]

The second route to judicial intervention in the release of public records is where, as in this case, the agency intends

---

[3]*See* RCW 42.17.010(11); J. Franklin & R. Bouchard, *Freedom of Information and Privacy Acts* § 1.02 (2d ed. 1988).

[4]*See Cowles Pub'g Co. v. State Patrol*, 109 Wn.2d 712, 748 P.2d 597 (1988); *Oliver v. Harborview Med. Ctr.*, 94 Wn.2d 559, 618 P.2d 76 (1980); *Hearst*, at 123; *Hudgens v. Renton*, 49 Wn. App. 842, 746 P.2d 320 (1987); *Moser v. Kanekoa*, 49 Wn. App. 529, 744 P.2d 364 (1987); *Columbian Pub'g Co. v. Vancouver*, 36 Wn. App. 25, 671 P.2d 280 (1983); *Laborers Int'l, Local 374 v. Aberdeen*, 31 Wn. App. 445, 642 P.2d 418, *review denied*, 97 Wn.2d 1024 (1982); *Hafermehl v. UW*, 29 Wn. App. 366, 628 P.2d 846 (1981).

[5]RCW 42.17.340(1); *Hearst*, at 130.

[6]RCW 42.17.340(2); *Hearst*, at 130.

[7]RCW 42.17.340(3); *Columbian Pub'g*, at 33.

to disclose the public records to a requester and an interested third party seeks to prevent disclosure. In this situation, the objector may proceed under the injunction statute. It provides:

Court protection of public records. The examination of any specific public record may be enjoined if, upon motion and affidavit, the superior court for the county in which the movant resides or in which the record is maintained, finds that such examination would clearly not be in the public interest and would substantially and irreparably damage any person, or would substantially and irreparably damage vital governmental functions.

RCW 42.17.330.

■■ In a proceeding brought under this injunction statute, the party seeking to prevent disclosure has the burden of proof.[8] Although the act does not expressly declare such a proceeding to be de novo, the injunction statute by its terms contemplates that the court may go beyond the confines of any agency record in making its decision. It is clear, therefore, that judicial review of the agency decision is also de novo in actions brought under this statute.[9] While no provision of the act authorizes the award of actual costs and attorneys' fees to an objector who successfully obtains an injunction against disclosure, such costs and fees may be awarded where a party succeeds in getting a wrongfully issued injunction dissolved.[10] Where, as in this case, the record on both trial and appeal consists of affidavits and documents, and the trial court has neither seen nor heard testimony requiring it to assess the credibility or competency of witnesses, nor had to weigh the evidence or reconcile conflicting evidence in reaching a

---

[8] *Seattle Fire Fighters, Local 27 v. Hollister,* 48 Wn. App. 129, 137, 737 P.2d 1302, *review denied,* 108 Wn.2d 1033 (1987).

[9] *Cf.* 1 J. O'Reilly, *Federal Information Disclosure* § 10.06, at 10–28 n.13 (1985).

[10] *Seattle Fire Fighters,* at 138–39.

decision, the appellate court stands in the same position as did the trial court in reviewing the record.[11]

To analyze the case, we start with the proposition that the act establishes an affirmative duty to disclose public records unless the records fall within specific statutory exemptions or prohibitions.[12] It follows that in an action brought pursuant to the injunction statute (RCW 42.17-.330), the initial determination will ordinarily be whether the information involved is in fact within one of the act's exemptions or within some other statute which exempts or prohibits disclosure of specific information or records.[13] If it is not so exempted or prohibited, then the records are to be released subject to the agency's right in certain situations to delete identifying details from the record, in accordance with another specific provision of the act.[14] If it is exempted or prohibited, then the judicial inquiry commences.

In the present case, the documents sought are within the investigative records exemption of the act. That exemption provides:

(1) The following are exempt from public inspection and copying;
. . .

---

[11]*Smith v. Skagit Cy.*, 75 Wn.2d 715, 718–19, 453 P.2d 832 (1969); *Eiden v. Snohomish Cy. Civil Serv. Comm'n*, 13 Wn. App. 32, 37, 533 P.2d 426 (1975).

[12]RCW 42.17.010 *et seq.; Hearst*, at 130. *See also* RCW 42.17.255, .260 effective July 26, 1987, which expressly so provide.

[13]*See State Human Rights Comm'n v. Seattle*, 25 Wn. App. 364, 367, 607 P.2d 332 (1980) (City sought protective order to enjoin disclosure under RCW 42.17.260(1)); *Van Buren v. Miller*, 22 Wn. App. 836, 839, 592 P.2d 671 (1979) (assessor sought injunction to enjoin disclosure under RCW 42.17.310); *cf. Rhinehart v. Seattle Times Co.*, 98 Wn.2d 226, 236–37, 654 P.2d 673 (1982), *aff'd*, 467 U.S. 20 (1984); *Cowles Pub'g*, at 723–24. *See also* RCW 42.17.260, as amended effective July 26, 1987, expressly so providing.

[14]*See* RCW 42.17.260(1), and as amended by Laws of 1987, ch. 403, § 3(1), p. 1547. *See also* Laws of 1987, ch. 403, § 1, p. 1546.

(d) Specific intelligence information and specific investigative records compiled by investigative, law enforcement, and penology agencies, and state agencies vested with the responsibility to discipline members of any profession, the nondisclosure of which is essential to effective law enforcement or for the protection of any person's right to privacy.

RCW 42.17.310(1)(d).

Deleting the portions of this exemption not here applicable, the act thus declares "exempt from public inspection and copying . . . specific investigative records compiled by investigative . . . agencies, . . . the nondisclosure of which is essential to effective law enforcement or for the protection of any person's right to privacy."

■ Applying this investigative records exemption to the facts of the case before us, we conclude as follows. The file covering the investigation is obviously an investigative record. It was prepared by an investigator for the Liquor Board, an investigative agency.[15] The agency's decision to voluntarily turn over these records, made as it was by the law enforcement agency which itself prepared the records, convinces us in this case that the nondisclosure of the records is not essential to effective law enforcement. Unlike *Cowles Pub'g,* which was recently before us, no testimony was taken at the trial court level in this case and there is no finding by the trial court that nondisclosure is essential to effective law enforcement. The legal issue thus becomes whether "nondisclosure [of the records] is essential . . . for the protection of any person's right to privacy." For the reasons which follow, we conclude that it is not.

The "right to privacy" referred to in the act is invaded or violated only if disclosure about the person (1) would be

---

[15]The Liquor Board is an agency that exercises the State's police power in administering and enforcing the law and regulations pertaining to alcoholic beverage control. RCW 66.44.010(2); WAC 314–60–030.

highly offensive to a reasonable person, and (2) is not of legitimate concern to the public.[16]

The right of privacy is commonly understood to pertain only to the intimate details of one's personal and private life.[17] The case before us, however, concerns antics before a group of some 40 or more people, not at a residence but on premises licensed by the Liquor Board. We perceive no personal intimacy involved in one's presence or conduct at such a well attended and staged event which would be either lost or diminished by being made public.

It may be true, of course, that news media coverage of an attendee's presence and perhaps conduct at an event of this type, particularly if the attendee had overindulged in alcoholic beverages beforehand, might well cause "inconvenience or embarrassment"[18] to the attendee. That does not, by itself, however, meet the "highly offensive to a reasonable person"[19] standard as it must in order to constitute a right to privacy entitled to protection from disclosure under the act.[20]

Thus, the nondisclosure of the Liquor Board's investigation of the party is not "essential . . . for the protection of any person's right to privacy". It is, therefore, unnecessary

---

[16]This definition of the "right to privacy" initially set forth in *Hearst*, at 135–36, has now been specifically written into the act by the Legislature as RCW 42.17.255 effective July 26, 1987. Laws of 1987, ch. 403, § 2, p. 1547.

[17]*See* Restatement (Second) of Torts § 652D, at 386 (1977); *Hearst*, at 138; *Cowles Pub'g*, at 726.

[18]*See* RCW 42.17.340(2); *Columbian Pub'g*, at 30; *Seattle Fire Fighters*, at 133–36.

[19]See footnote 16, *supra*.

[20]*See International Union v. Garner*, 601 F. Supp. 187, 191 (M.D. Tenn. 1985); *Fry v. Ionia Sentinel–Standard*, 101 Mich. App. 725, 300 N.W.2d 687, 690 (1980); *Cape Publications, Inc. v. Bridges*, 423 So. 2d 426, 427 (Fla. Dist. Ct. App. 1982), *cert. denied*, 464 U.S. 893 (1983).

to address the other aspect of the right to privacy standard, *i.e.,* whether the matter is "of legitimate concern to the public".

The nondisclosure of the records not being essential to law enforcement, and there being no violation of anyone's right to privacy, the parties seeking to enjoin the disclosure of information have not made the requisite showing under the investigative records exception and have not sustained their burden of proof under the injunction statute, RCW 42.17.330. The trial court, therefore, did not err in ruling that the investigative record was not exempt from disclosure under the state freedom of information act.

To this point in the opinion, we have abstained from mentioning the occupations of the attendees at the event. This is because the determinative principles of law enunciated herein apply to everyone alike, hence in the eyes of the law the occupations of the persons involved are irrelevant. The nature of the dissent is such, however, that it becomes necessary to note that at least a number of the attendees were off–duty Spokane police officers.

The records here sought are not records of police internal investigations concerning which different rules may pertain;[21] they are records of a Liquor Board investigation. The police officers were attending a social event, on their own time, and did not purport to be acting in the line of duty. Accordingly, under the facts presented we perceive no basis in law or logic to allow the request of certain Spokane officials to override the Liquor Board's decision to make public the report of the Liquor Board's own investigative file.

It has also been suggested that because the Spokane Chief of Police ordered the officer attendees to cooperate with the Liquor Board investigator, this should somehow change the law pertaining to this case. It does not. As

---

[21]*See Cowles Pub'g Co. v. State Patrol,* 109 Wn.2d 712, 748 P.2d 597 (1988).

noted, although the rules are otherwise in police department internal investigation proceedings,[22] this is not such a case. Since state law, Liquor Board regulations and the Spokane Municipal Code seem aimed at criminalizing just about every kind of lewd and disorderly conduct imaginable, at least on premises licensed by the Liquor Board,[23] the officers had the right to not incriminate themselves by giving statements if they so chose.[24]

It is further argued that because the statements were taken under a pledge of confidentiality by the Liquor Board investigator, they should be considered confidential here. Again, we disagree. In the first place, as the trial court observed in its memorandum decision, "the issue of promise or agreement that the officers' statements would be held confidential is disputed". In the second place, the law of this state is well settled, "promises cannot override the requirements of the disclosure law."[25] The Liquor Board had every right to consider any such pledge in making its determination whether the nondisclosure of the records is essential to effective law enforcement, but for reasons known only to the Board, it apparently decided that it was not.

No good purpose would be served by responding to the remaining arguments raised herein. They are subsidiary to the principal issue decided. Furthermore, some 2½ months after the May 1987 entry of the trial court's Order Directing Release of Washington State Liquor Control Board Report, the Legislature substantially amended the state

---

[22]See Seattle Police Officers' Guild v. Seattle, 80 Wn.2d 307, 316, 494 P.2d 485 (1972).

[23]See RCW 66.44.175, .180; WAC 314–16–125; Spokane Municipal Code 10.02-.030, 10.02.060, 10.02.070, 10.05.040, 10.06.020, 10.08.030, 10.10.020, 10.12.020, 10.20.010 (August 1983).

[24]U.S. Const. amend. 5; Const. art. 1, § 9.

[25]Hearst Corp. v. Hoppe, 90 Wn.2d 123, 137, 580 P.2d 246 (1978).

freedom of information act.[26] It should be noted in this latter regard, however, that the 1987 amendments to the act did not change the law in the respects discussed in this opinion.

Affirmed.

UTTER, BRACHTENBACH, DORE, DURHAM, and SMITH, JJ., concur.

DOLLIVER, J. (dissenting)—The statute the court is called upon to apply to this case, RCW 42.17.310(1)(d), reads as follows:

The following are exempt from public inspection and copying:

. . .

(d) Specific intelligence information and specific investigative records compiled by investigative, law enforcement, and penology agencies, and state agencies vested with the responsibility to discipline members of any profession, the nondisclosure of which is essential to effective law enforcement or for the protection of any person's right to privacy.

While I concur with the disposal of the privacy issue by the majority, I cannot accept its refusal to discuss whether

[26]The trial court's order herein was entered on May 6, 1987. The 1987 amendments to the state freedom of information act, Laws of 1986, ch. 403, did not become effective until July 26, 1987. See Laws of 1987, Vol. 2, p. ii.

The purposes of the 1987 amendments were stated by the Legislature in the amendatory act to be as follows:

The legislature intends to restore the law relating to the release of public records largely to that which existed prior to the Washington Supreme Court decision in "In re Rosier," 105 Wn.2d 606 (1986). The intent of this legislation is to make clear that: (1) Absent statutory provisions to the contrary, agencies possessing records should in responding to requests for disclosure not make any distinctions in releasing or not releasing records based upon the identity of the person or agency which requested the records, and (2) agencies having public records should rely only upon statutory exemptions or prohibitions for refusal to provide public records. Further, to avoid unnecessary confusion, "privacy" as used in section 2 of this 1987 act is intended to have the same meaning as the definition given that word by the Supreme Court in "Hearst v. Hoppe," 90 Wn.2d 123, 135 (1978).

Laws of 1987, ch. 403, § 1, p. 1546.

the nondisclosure of the investigation report is "essential to effective law enforcement". I believe it is and thus dissent.

The majority disposes of the issue of whether nondisclosure would be "essential to effective law enforcement" in two sentences. First, the majority attempts to distinguish *Cowles Pub'g Co. v. State Patrol*, 109 Wn.2d 712, 748 P.2d 597 (1988):

Unlike *Cowles Pub'g*, which was recently before us, no testimony was taken at the trial court level in this case and there is no finding by the trial court that nondisclosure is essential to effective law enforcement.

Majority, at 37.

The majority, at 35 quotes the controlling statute, RCW 42.17.330, which states:

The examination of any specific public record may be enjoined if, upon motion and affidavit, the superior court for the county in which the movant resides or in which the record is maintained, finds that such examination would clearly not be in the public interest and would substantially and irreparably damage any person, or would substantially and irreparably damage vital governmental functions.

The matter was before the trial court and is before us solely on the affidavits, documents, and arguments of counsel. No testimony was taken. Under these circumstances, as the majority accurately states, "the appellate court stands in the same position as did the trial court in reviewing the record." (Footnote omitted.) Majority, at 36. Just as the trial court and this court may determine the question of privacy on the record presented, so can this court determine whether nondisclosure is "essential to effective law enforcement". The failure of the trial court even to mention this issue does not bar our addressing the issue. In addition, it should be noted the trial court, in its discussion of the statute, did not have the benefit of our opinion in *Cowles*.

The majority then negates the need to address the "essential to effective law enforcement" issue in another sentence:

> The agency's decision to voluntarily turn over these records, made as it was by the law enforcement agency which itself prepared the records, convinces us in this case that the nondisclosure of the records is not essential to effective law enforcement.

Majority, at 37. The majority assumes only the effectiveness of the law enforcement agency which prepares the records, here the Liquor Control Board, is protected by RCW 42.17.310(1)(d). The majority fails to consider whether nondisclosure is essential to effective law enforcement of the Spokane Police Department.

This case is controlled by *Cowles Pub'g Co. v. State Patrol*, 109 Wn.2d 712, 748 P.2d 597 (1988). In *Cowles,* we held "the confidentiality of the names of persons reflected on the records of internal investigations is necessary to effective law enforcement." *Cowles,* at 733. In *Cowles,* the issue was whether the Spokane Police Department could be required, pursuant to the public disclosure act, RCW 42.17, to release all internal investigation records pertaining to citizens' complaints against police officers. One of the reasons for the nondisclosure in *Cowles* was:

> Unlike a criminal defendant, an officer subject to internal investigation must give a statement regarding an incident under investigation, and failure to cooperate with the internal investigations unit could lead to dismissal.

*Cowles,* at 730. Accordingly, there are a number of facts, not mentioned by the majority, which I believe are essential to reaching a decision.

1. In a memorandum of November 6, 1986, R.D. Panther, Chief of the Spokane Police Department, directed all members of the Spokane Police Department "to cooperate with the [Liquor Control] Board's investigation [of the Spokane Police Guild Club] pursuant to department Rule 3.27.3." This rule states: "Members shall cooperate with all agencies engaged in the administration of criminal justice and other public agencies . . ." Chief Panther ended his memorandum by stating: "Any member who fails to comply with this

or any other rule will be subject to appropriate disciplinary sanctions."

2. Four of the five officers interviewed by the Liquor Control Board—and this was undisputed—stated they were ordered by their employer, the Spokane Police Department, to answer all questions of the Board's investigation. All officers stated they were given assurances of confidentiality. Although this is disputed by the Board and the trial court found the issue of promises or agreement that the officers' statements would be held confidential to be disputed, there is no dispute that the investigatory files were marked "Confidential" by the Liquor Control Board.

3. The affidavit by the Assistant Chief of the Spokane Police Department, Richard A. Jorgenson, who was authorized to speak on behalf of the Spokane Police Department, is undisputed. I quote from this affidavit extensively because of its importance to the case:

1. The officers' activities had already been thoroughly investigated by the Internal Affairs Unit of the Spokane Police Department; numerous letters of reprimand and several suspensions were issued as a result.

2. The officers did not give voluntary statements to the Board; their statements were compelled by virtue of a Spokane Police Department rule and a special order of Chief of Police Robert Panther. *See* Exhibit "B", attached hereto and incorporated herein as if fully set forth.

3. The names of the officers involved have not been disclosed through other potential resources.

4. There will not be a public hearing over the incident in question because the Board and licensee have agreed upon a penalty.

5. This investigation focused on the Club, *not* the officers.

6. The officers believed their identities would remain confidential at this stage.

7. The confidentiality of the witnesses was critical to the investigator, Marion Berry—she would probably not have received much information without assuring the officers of confidentiality.

I consider the fact that the officers' statements were compelled to be very significant. No other citizen is compelled to talk about off–duty activity as these officers were. If they violated the rule or order (Exhibit B) they could be punished for insubordination, including termination of employment. The written order was requested by the Washington State Liquor Control Board investigator because she anticipated, and received, great reluctance on the part of the officers to talk to her. Officers refused to talk to her until they were ordered to. Their compelled statements, which were generated during an investigation of the licensee's activity, [are] now being used as a sword against them by the newspapers. It will be extremely difficult for me and other law enforcement commanders to order officers to give statements and cooperate with other agencies when those statements are used for purposes other than law enforcement.

As stated by Assistant Chief Jorgenson, "numerous letters of reprimand and several suspensions were issued as a result" of an investigation of the officers' activities by the internal affairs division of the Spokane Police Department. Given our recent opinion in *Cowles,* it seems clear that if the statements by the officers in question had been made in an internal investigation, they would have been held confidential under RCW 42.17.310(1)(d).

If these investigations may be kept confidential, consistent with effective law enforcement by the Spokane Police Department, it hardly makes sense for this same confidentiality to be breached essentially through the back door by the release of the information by another law enforcement agency. To use the words in a memorandum of the City Attorney for Spokane:

Clearly, the Board's file in this matter constitutes "specific investigative records [compiled] by [an] investigative [or] law enforcement" agency as defined by the statute. *Ashley v. Public Disclosure Comm'n,* 16 Wn. App. 830, 560 P.2d 1156 [(1977)]. Nondisclosure of the officers' identities is essential to effective law enforcement for various reasons.

First, the officers were compelled to give their statements; they were not voluntary. In effect, they were compelled to blow the whistle on themselves to another agency. To publish their statements under the circumstances of this case is totally unfair to the individuals and constitutes an abuse of a compelled statement. If their identities are disclosed with their statements, the Spokane Police Department rule and the Chief's order to cooperate with the Board constitutes nothing less than an order to the officer to sit down with and tell all to a newspaper reporter. This is contrary to the intent of the rule, which is to ensure that the law enforcement agencies that need certain information get it in the most efficient manner possible. Disclosure in this case will discourage officers from complying in the future. The officer's reward for compliance is wholesale embarrassment. The effect is to put law enforcement agencies in the position of not being able to compel their employees to give statements to other agencies.

Disclosure is also extremely unfair and unsettling to the officer because of the promises of confidentiality, as discussed in plaintiffs' brief. It is important to consider that the Board was *not* investigating the officers—it was investigating the Club. This factor ties into both the privacy issue and the "essential to effective law enforcement" issue. The problems of lowered morale and higher stress levels among the officers are real problems for police administrators to deal with. It is essential that officers have the ability to think clearly and use proper judgment at all times. Low morale and high stress levels reduce that ability and interfere with the discipline and motivation within the organization.

By affidavit, the City Attorney stated that: "Release of this information, under the circumstances presented by this case, will cause substantial and irreparable damage to the Spokane Police Department's ability to operate as a law enforcement agency, which is a vital governmental function." I find this reasoning compelling. Furthermore, this affidavit is uncontroverted.

Although I strongly dissented in *Cowles* (*see Cowles*, at 734 (Dolliver, J., dissenting)), it is now the rule in this state. *Cowles* held compelled officer statements given in an

internal police investigation were exempt from disclosure as essential to effective law enforcement. To refuse to extend this analysis and exempt compelled officer statements given in an internal investigation by another law enforcement agency makes little sense. It places the court in the position of appearing to play a game when dealing with these police officers' statutory rights. I would reverse the trial court and order the Liquor Control Board files under consideration here are exempt from disclosure under RCW 42.17-.310(1)(d).

I dissent.

CALLOW, C.J., and PEARSON, J., concur with DOLLIVER, J.

Reconsideration denied April 14, 1989.