65 P.3d 337 (2003)
116 Wash.App. 48
CITY OF REDMOND, Appellant,
v.
CENTRAL PUGET SOUND GROWTH MANAGEMENT HEARINGS BOARD, STATE OF WASHINGTON; and Richard L. Grubb, Respondents, and
Lake Washington Youth Soccer Association, Intervenor/Appellant, and
Preserve Land for Agriculture Now, Intervenor/Respondent.
No. 48814-7-1.
Court of Appeals of Washington, Division 1.
March 3, 2003.
*338 James Edward Haney, Ogden Murphy Wallace, Seattle, WA, Appellants, City of Redmond.
Sharon S. Eckholm, Asst. Atty. General, Olympia, WA, for Respondents, Central Puget Sound Growth Management Hearings Board.
Richard L. Grubb, Redmond, WA, pro se.
Glen Jay Amster, Herbert P. Sorg, Michael B. King, Lane Powell Spears Lubersky, Seattle, WA, for Intervenor/Appellant, Lake WA, Youth Soccer Assoc.
Peter J. Eglick, Jane S. Kiker, Helsell Fetterman LLP, Seattle, WA, for Intervenor/Respondent, Preserve Land for Agriculture Now.
Alan D. Copsey, Asst. Atty. General, Olympia, WA, for Amicus Curiae(s), WA Dept. State Dept. Comm. Trade & Econ.
Peter G. Ramels, Seattle, WA, for King County.
Hilary S. Franz, Johns Monroe Mitsunaga, Bainbridge Is., WA, for Upper Green Valley, Preservation Society.
*339 ELLINGTON, J.
When reviewing a challenge to a zoning ordinance, a growth management hearings board must presume the ordinance valid, and the challenger has the burden of establishing otherwise. Here the Central Puget Sound Growth Management Hearings Board placed the burden on the City of Redmond to prove the validity of an ordinance designating property for urban recreational uses. The Board further erred by invalidating the ordinance's designation. We reverse and remand.

FACTS
The Property. At issue in this case are adjacent parcels in the northern Sammamish Valley, referred to as the Benaroya and Muller properties. Both parcels lie just inside the northern border of the City of Redmond. The Muller property is 37 acres, bordered on the east by the King County 60-Acre Park, which is in the King County Agricultural Production District. To the north, both parcels are bordered by the Agricultural Production District of unincorporated King County. To the south, both properties are bordered by Willows Run Golf Course. To the west of the 32-acre Benaroya parcel lies property designated as a business park. King County purchased the Muller property under its Farmland Preservation Program, and the property is therefore deed-restricted for use as agricultural or open space. The City of Redmond has purchased the Benaroya property.
Procedural History. Before 1995, the properties in question were zoned "agricultural," a designation that, as then defined, permitted some recreational uses. In 1995, the City of Redmond adopted its first Growth Management Act (GMA) comprehensive plan in Ordinance 1847. The comprehensive plan designated the Benaroya and Muller properties as agricultural. In January 1996, the City adopted a transfer of development rights (TDR) program as required by the GMA for agricultural land.
In March 1996, the Board held the agricultural designation improper, on grounds that (1) the property did not meet the GMA definition of "agricultural land," because the lands were fallow and the owners did not intend to farm their properties; and (2) the City had not enacted a TDR program prior to adopting the agricultural designation as required by the TDA.[1] The Board ordered the City to redesignate the property for nonagricultural urban uses. The superior court affirmed the Board. The City appealed. We certified the case to the Supreme Court.
Meanwhile, the City complied with the Board's order to redesignate the property. In December 1996, in Ordinance 1917, the City changed the designation of the northern Sammamish Valley, on an interim basis, to urban recreation. Ordinance 1917 contained a savings and revival clause, the purpose of which was to revive the agricultural designation if a court concluded that the City's definition of "agricultural land" was correct. In March 1997, the Board ruled that the interim urban recreation designation in Ordinance 1917 complied with the Board's March 1996 order. Neither Ordinance 1917 nor the Board's finding of compliance was challenged.
In August 1998, the Supreme Court issued its opinion in Redmond's appeal. The court rejected the Board's definition of "agricultural land," holding that the owner's intended use is not determinative of whether the land is agriculturalrather, the question is whether land is capable of being used for agriculture.[2] The court nevertheless affirmed the Board's invalidation[3] of the agricultural *340 designation, because the City had not enacted a TDR program before designating the valley as agricultural land.[4]
On remand in 1998, the Board reversed its decision regarding the definition of "agricultural land," but found that its March 1997 finding that the interim urban recreation designation was in compliance remained unaffected by the Supreme Court's opinion. This order on remand was not challenged.
In 1999, the Lake Washington Youth Soccer Association (LWYSA) and the City applied for a special development permit to use the Benaroya property for soccer practice. On December 14, 1999, the City passed Ordinance 2050, permanently designating the northern Sammamish Valley for urban recreational uses.
A petition was filed challenging Ordinance 2050. The Board characterized the City's attempt to make the urban recreational designation permanent as an attempt to "remove the agricultural land designation it had previously adopted."[5] The Board held such a "de-designation" could occur only where the City conclusively demonstrates that the GMA's "definitions and criteria for designation are no longer met."[6] With respect to the Benaroya and Muller properties, the Board held the City "failed to point to facts to justify removing these parcels from an agricultural designation."[7] The Board then entered a finding of invalidity under RCW 36.70A.302.
The City appealed to the superior court; Preserve Land for Agriculture Now (PLAN) was allowed to intervene. The superior court affirmed the Board. The City and LWYSA[8] appeal.

DISCUSSION
Standard of Review. Judicial review of Growth Management Hearings Board decisions begins in superior court.[9] On further appeal to this court, we directly review the record before the Board, sitting in the same position as the superior court.[10] Because the City challenges the Board's order in an adjudicative proceeding, RCW 34.05.570(3) applies. That statute sets forth nine grounds for relief from an agency decision, of which the City asserts three:
(d) The agency has erroneously interpreted or applied the law;
(e) The order is not supported by evidence that is substantial when viewed in light of the whole record before the court, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this chapter;
. . . .
(i) The order is arbitrary or capricious.[11]
We review issues of law under RCW 34.05.570(3)(d) de novo.[12] We accord deference to the Board's interpretation of the law, but its interpretations are not binding.[13] Substantial evidence under RCW 34.05.570(3)(e) is "a sufficient quantity of evidence to persuade a fair-minded person of the truth or correctness of the order."[14] As used in RCW 34.05.570(3)(i), "arbitrary and capricious" means "`willful and unreasoning action, taken without regard to or consideration of the facts and circumstances surrounding the action. Where there is room for two opinions, an action taken after due consideration is not arbitrary and capricious even though a reviewing court may believe it to be erroneous.'"[15]
*341 Burden of Proof Applied by the Board. The Growth Management Act limits the purview of the Growth Management Hearings Board. In reviewing the City's actions, the Board is required to presume that comprehensive plans and development regulations are valid.[16] The burden is on the petitioner to show a city's actions do not comply with the GMA, and the Board must find compliance unless the city's action is clearly erroneous.[17] Here, the Board followed none of these procedures. Instead, it required the City to demonstrate the validity of its designation:
Once lands are designated as agricultural lands they are not necessarily destined to be agricultural lands forever. This is not license for local governments to "dedesignate" agricultural resource lands where it may simply be locally popular or politically convenient. "De-designation" of agricultural lands is a serious matter with potentially very long-term consequences. Such de-designation may only occur if the record shows demonstrable and conclusive evidence that the Act's definitions and criteria for designation are no longer met. The documentation of changed conditions that prohibit the continued designation, conservation and protection of agricultural lands would need to be specific and rigorous. If such a de-designation action were challenged, it would be subject to heightened scrutiny by the Board.[18]
The Board's conclusion of law further highlights this burden-shifting:
With the exception of the Benaroya and Muller parcels, Petitioner has failed to carry his burden of showing how the City's action did not comply with the requirements of the GMA. The City has presented demonstrable and conclusive evidence of changed circumstances to justify its de-designation of agricultural resource lands in the "Northern Sammamish Valley." The Board finds that the City is in compliance with the goals and requirements of the GMA, except for the Benaroya and Muller parcels. With regard to the Benaroya and Muller parcels, the Board finds that Petitioner has shown that the City's action did not comply with the requirements of the Act. The City has failed to point to facts to justify removing these parcels from an agricultural designation.[19]
The Board's test for what it calls "de-designating" agricultural lands has no support in the GMA. Nothing in the GMA suggests a city must present "specific and rigorous" evidence subject to "heightened scrutiny" when defending a land use designation. Rather, the GMA requires the Board to presume a challenged ordinance is valid, and the challenger has the burden of establishing invalidity.[20]
Respondents nevertheless argue that the Board's burden shifting was warranted under King County v. Central Puget Sound Growth Management Hearings Board[21] (hereinafter Green Valley.) There, King County had amended its comprehensive plan and zoning code to allow active recreational uses for athletic fields within designated agricultural areas. The Supreme Court concluded the amendment did not comply with the GMA, holding that the GMA's mandatory duty to designate and conserve agricultural lands clearly trumped the GMA's recreation provisions.[22] The court undertook an extensive review of the GMA's agricultural and recreation provisions, summarizing them as follows:
[T]he agricultural lands provisions (RCW 36.70A.020(8), .060, and .170) direct counties and cities (1) to designate agricultural lands of long-term commercial significance; (2) to assure the conservation of agricultural land; (3) to assure that the use of adjacent lands does not interfere with their continued use for agricultural purposes;

*342 (4) to conserve agricultural land in order to maintain and enhance the agricultural industry; and (5) to discourage incompatible uses. The recreation provisions (RCW 36.70A.020(9); .150, and .160) direct counties and cities (1) to identify lands useful for recreation; (2) to identify open space corridors; and (3) to encourage the development of recreational opportunities.[23]
The court noted that the Legislature emphasized the importance of the GMA's agricultural provisions by requiring counties and cities to designate and conserve agricultural land before planning for urban development.[24] The court contrasted the mandatory language in the GMA's agricultural provisions (designate agricultural land; conserve such land in order to maintain and enhance the agriculture industry) with the permissive language in the recreation provisions (identify lands useful for recreation; encourage development of recreational opportunities) and concluded that "[a]lthough the GMA encourages recreational uses of land, there is no conservation mandate for recreational use as with agricultural use."[25] The court's conclusion is consistent with its holding in Redmond that "[i]n seeking to address the problem of growth management in our state, the Legislature paid particular attention to agricultural lands."[26]
Green Valley does not hold that an agricultural designation causes a shift in the burden of persuasion. Respondents contend, however, that its emphasis on the GMA's mandate to protect agricultural land justifies the Board's approach. This argument overlooks the GMA's directives regarding land in urban growth areas, and its directive that challenged designations be presumed valid. It also overlooks the requirement that within urban growth areas, cities and counties must:
Ensure that those public facilities and services necessary to support development shall be adequate to serve the development at the time the development is available for occupancy and use without decreasing current service levels below locally established minimum standards.[27]
The Board's analysis is contrary to the GMA. To the extent the Board required the City to establish the validity of the urban recreational designation, or subjected the City's decision to heightened scrutiny, the Board erred.
Validity of Urban Recreation Designation. The Board found that when the City made the interim urban recreation designation permanent, the City was really attempting to "remove the agricultural resource land designation that it had previously adopted."[28] The Board concluded this de-designation was improper. This rationale was error, because there was no agricultural designation in place to remove.[29]
As previously indicated, the Board originally invalidated the agricultural designation of the valley, and required the City to change the designation, which it did on an interim basis. The Board upheld this interim urban recreation designation as compliant with the GMA. The City therefore argues there was no agricultural designation to remove.
*343 Respondents point out, however, that Ordinance 1917, which contained the interim designation, also contained a savings and revival clause, the purpose of which was to revive the original agricultural designation, if the City's definition of "agricultural land" was upheld. Therefore, according to Respondents, when the Supreme Court rejected the Board's definition and concluded the City's definition was indeed correct, the savings and revival clause was triggered.
We reject this argument. Although the Supreme Court agreed with the City's definition of "agricultural land," it nevertheless invalidated the agricultural designation of the properties because there was no TDR program in place before the ordinance was enacted.[30] The ordinance therefore was never effective to designate the Benaroya or Muller parcels for agricultural use, and there was nothing to save or revive. The fact that the City later enacted a TDR program does not retroactively cure its failure to do so previously, because the GMA requires a TDR program to be in place before land can be designated agricultural.[31] There was thus no agricultural designation in place for the City to remove, or for the savings clause to revive. Moreover, on remand, the Board again upheld the urban recreational designation, finding that the Supreme Court's opinion did not affect its original determination that the designation complied with the GMA.

CONCLUSION
The Supreme Court has already reversed the Board's definition of "agricultural land" as not supported by the GMA. The Board's test for when agricultural land can be "dedesignated" is also not supported by the GMA. The Board erred by placing the burden on the City to prove the validity of Ordinance 2050. Finally, the land at issue here was never properly designated for agricultural use; it is now validly designated as urban recreational, and the Board erred by concluding otherwise.[32] We therefore reverse the Board again and remand for any further proceedings which may be necessary, consistent with this opinion.
KENNEDY and GROSSE, JJ., concur.
NOTES
[1] Benaroya v. Redmond, 1996 WL 650317, *8-10 (Wash. Cent. Puget Sound Growth Mgmt. Hrgs. Bd., Mar. 25, 1996).
[2] City of Redmond v. Cent. Puget Sound Growth Mgmt. Hrgs. Bd., 136 Wash.2d 38, 53, 959 P.2d 1091 (1998).
[3] In motions for reconsideration to this court, respondents emphasize that the action was not a finding of invalidity under RCW 36.70A.302. Invalidation in the general sense, however, is what the Supreme Court affirmed. See Redmond, 136 Wash.2d at 56, 959 P.2d 1091 ("the Board properly invalidated the designation"), 57, 959 P.2d 1091 ("we uphold the Board's invalidation"), and 58, 959 P.2d 1091 ("I also agree with the decision of [the Board] which invalidated the agricultural designation...." (Sanders, J. concurring)).
[4] Redmond, 136 Wash.2d at 56-57, 959 P.2d 1091.
[5] Clerk's Papers at 16.
[6] Clerk's Papers at 19.
[7] Clerk's Papers at 22.
[8] For convenience, appellants City of Redmond and LWYSA are referred to collectively as "the City."
[9] RCW 36.70A.295(1).
[10] Redmond, 136 Wash.2d at 45, 959 P.2d 1091.
[11] RCW 34.05.570(3)(d), (e), (i).
[12] Redmond, 136 Wash.2d at 46, 959 P.2d 1091.
[13] Redmond, 136 Wash.2d at 46, 959 P.2d 1091.
[14] Redmond, 136 Wash.2d at 46, 959 P.2d 1091.
[15] Redmond, 136 Wash.2d at 46-47, 959 P.2d 1091 (quoting Kendall v. Douglas, Grant, Lincoln & Okanogan Counties Pub. Hosp. Dist. No. 6, 118 Wash.2d 1, 14, 820 P.2d 497 (1991)).
[16] RCW 36.70A.320.
[17] RCW 36.70A.320.
[18] Clerk's Papers at 19 (emphasis added).
[19] Clerk's Papers at 22 (emphasis added).
[20] RCW 36.70A.320.
[21] 142 Wash.2d 543, 14 P.3d 133 (2000).
[22] Green Valley, 142 Wash.2d at 562-63, 14 P.3d 133.
[23] Green Valley, 142 Wash.2d at 558, 14 P.3d 133.
[24] Green Valley, 142 Wash.2d at 555-56, 14 P.3d 133.
[25] Green Valley, 142 Wash.2d at 558, 562, 14 P.3d 133.
[26] Redmond, 136 Wash.2d at 47, 959 P.2d 1091.
[27] RCW 36.70A.020(12). Parks and recreation facilities are "public facilities." RCW 36.70A.030(12).
[28] Clerk's Papers at 16.
[29] The Board caused a great deal of confusion in this matter. Initially it applied an untested definition of "agricultural land," held the City's agricultural designation improper, and ordered the City to redesignate the property for urban uses. The City did as it was directed, and designated the area for urban recreational use, a designation the Board expressly approved. This changed the nature of the area. After the Supreme Court's decision, the Board reversed, and concluded that the City had acted improperly in changing the designation from agricultural to urban recreation. It is unclear how the City could act improperly where both the Supreme Court and the Board rejected the agricultural designation, and the Board twice concluded the urban recreation designation was appropriate.
[30] Redmond, 136 Wash.2d at 58, 959 P.2d 1091 ("Because the City did not have a TDR program in place when the designations were made, RCW 36.70A.060(4) invalidates the City's designation of the subject properties as agricultural lands.").
[31] RCW 36.70A.060(4).
[32] On motion for reconsideration to this court, PLAN argues this matter should be remanded to the Board for determination under the proper test. Given the deference owed by the Board to the City and the Board's own orders affirming the propriety of the urban recreational designation, we see no basis for the Board to reject the urban recreational designation.