121 P.3d 764 (2005)
CLALLAM COUNTY, a political subdivision of the State of Washington, Respondents,
v.
WESTERN WASHINGTON GROWTH MANAGEMENT HEARINGS BOARD, an administrative agency; Protect the Peninsula's Future, a Washington nonprofit corporation; and Washington Environmental Council, Appellants.
No. 31283-2-II.
Court of Appeals of Washington, Division 2.
October 25, 2005.
*765 Joseph B. Genster, Hillis Clark Martin Peterson, Ann M. Gygi, Attorney at Law, Seattle, WA, Martha Patricia Lantz, Offc. of Atty. Gen. Lic. & Admin. Law Div., Olympia, WA, for Respondent.
Gerald Barclay Steel, Attorney at Law, Olympia, WA, for Appellant.
ARMSTRONG, J.
¶ 1 The Western Washington Growth Management Board invalidated Clallam County's preexisting agricultural uses exemption from the County's critical areas ordinance. The *766 superior court reversed the Board. Protect the Peninsula's Future appeals that ruling, arguing that the Growth Management Act permits reasonable regulation of such uses and that the superior court erred in finding that substantial evidence did not support the Board's decision. We reverse the trial court and remand to the Board.

FACTS
¶ 2 On December 28, 1999, Clallam County adopted Critical Areas Ordinance (CAO) No. 681, codified at chapter 27.12 of the Clallam County Code. Protect the Peninsula's Future (PPF) and the Washington Environmental Council challenged portions of the ordinance before the Western Washington Growth Management Hearings Board (Board). The Board found that Clallam County Code 27.12.035(7), the subject of this appeal, substantially interfered with the Growth Management Act (GMA) goals. CCC 27.12.035(7) created an exemption from the critical areas ordinance for ongoing, preexisting agricultural uses in critical areas or their buffers.
¶ 3 The Board concluded that the County could not completely exempt ongoing agricultural uses from the GMA regulation because such uses significantly impacted the environment. The Board also concluded that balancing the GMA's goals and requirements could be done only for designated agricultural resource lands,[1] not for all agriculture.
¶ 4 The Board found that CCC 27.12.035(7)'s exemption for existing agricultural activities was not limited to agricultural resource areas, was written too broadly, failed to protect critical areas, and did not comply with the GMA. It further found that the provisions of CCC 27.12.035(7), allowing existing and ongoing agricultural activities within the buffers established for major new development or within 50 feet of Type 5 waters, substantially interferes with the GMA's goals to protect the environment and shorelines. See RCW 36.70A.020(10), .480; RCW 90.58.020. The buffers for major new development ranged from 150 feet to 50 feet for Type 1 through four streams.[2]
¶ 5 On remand, the County limited CCC 27.12.035(7)'s agriculture exemption to lands classified as farm and agricultural land in the open space tax program created by chapter 84.34 RCW and required that all activities on the land comply with best management practices. The amended ordinance exempted:
Existing and ongoing agriculture that was conducted prior to the effective date of this chapter on lands designated as critical areas or their associated buffers; provided, that such lands are classified as farm and agricultural land pursuant to Chapter 84.34 RCW; provided further, that all activities occurring on such lands employ best management practices (BMPs). For the purposes of this exemption, acceptable BMPs shall include: (a) activities carried out consistent with farm plans issued and authorized by the Natural Resources Conservation Service (NRCS); (b) activities that demonstrate consistency with total maximum daily loads (TMDL) established by the Department of Ecology for specific operations; and/or (c) activities that demonstrate consistency with standard BMPs published by the NRCS, as now or hereafter amended. Written confirmation by the administrating agency that applicable BMPs are being met will constitute evidence of eligibility for this exemption.
CCC 27.12.035(7).
¶ 6 On October 26, 2001, the Board ruled that the amended exemption still did not comply with the GMA. It found that reducing protection for critical areas solely because the areas qualified for open space taxation did not balance agricultural goals with critical area goals. The Board concluded that reducing the critical area protection for all properties enrolled in the open space taxation program (chapter 84.34 RCW) substantially interferes with Goal 10 of the GMA (protecting the environment and enhancing water quality and availability) and was not *767 appropriately balanced by consideration of Goal 8 (maintaining and enhancing agriculture).
¶ 7 The County appealed the Board's decision to Clallam County Superior Court. The court reversed the Board, concluding that it had "erroneously interpreted and applied the GMA and its decision was not supported by evidence that is substantial when reviewed in light of the whole record before the Court." Clerk's Papers (CP) at 7. PPF appeals only the agricultural exemption issue.

ANALYSIS

I. PPF's Procedural Arguments
¶ 8 PPF argues that the County's issues are barred by res judicata, collateral estoppel, and failure to exhaust administrative remedies. PPF reasons that the Board decided in January 2001 that the County's agriculture exemption to critical areas did not comply with the GMA. The County did not appeal this decision, but reworked the ordinance. Thus, according to PPF, the County's present appeal is barred. Further, PPF argues that the County did not exhaust its administrative remedies because it failed to raise this issue of whether the GMA mandate to protect critical areas requires regulation of preexisting uses that harm these areas. The County responds that res judicata and collateral estoppel do not apply because this appeal is part of an ongoing proceeding and that it exhausted its administrative remedies.
¶ 9 Res judicata, or claim preclusion, applies to quasi-judicial administrative agency decisions. Lejeune v. Clallam County, 64 Wash.App. 257, 264-65, 823 P.2d 1144 (1992) (citing State v. Dupard, 93 Wash.2d 268, 274, 609 P.2d 961 (1980)). Collateral estoppel, or issue preclusion, also applies to these decisions. Christensen v. Grant County Hosp. Dist. No. 1, 152 Wash.2d 299, 307, 96 P.3d 957 (2004). Claim preclusion bars a party from asserting the same claim or cause of action in a subsequent proceeding. Hilltop Terrace Homeowner's Ass'n v. Island County, 126 Wash.2d 22, 31, 891 P.2d 29 (1995) (citation omitted). Issue preclusion bars relitigation of an issue in a subsequent proceeding involving the same parties, even if a different cause of action is asserted. Christensen, 152 Wash.2d at 306, 96 P.3d 957 (citing 14A KARL B. TEGLAND, WASH. PRAC., CIVIL PROCEDURE § 35.32, at 475 (1st ed.2003)).
¶ 10 A party must exhaust its administrative remedies before appealing to superior court. Citizens for Mount Vernon v. City of Mount Vernon, 133 Wash.2d 861, 866, 947 P.2d 1208 (1997) (citing RCW 34.05.534). Under RCW 36.70A.300(5), a party aggrieved by a final Board decision may appeal to superior court. Here, the October 26, 2001, order was the Board's final decision.[3]
¶ 11 The various stages of this litigation are part of a single proceeding. The County attempted to redraft its critical areas ordinance after the first Board decision and the County properly appealed to the superior court when the Board ruled against it a second time. After the superior court reversed the Board, PPF appealed to this court. PPF's procedural arguments fail.

II. Standard of Review
¶ 12 In reviewing a superior court's ruling on a Board decision, we apply the Administrative Procedures Act[4] standards directly to the agency record. City of Redmond v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 136 Wash.2d 38, 45, 959 P.2d 1091 (1998) (citing Tapper v. Employment Sec. Dep't, 122 Wash.2d 397, 402, 858 P.2d 494 (1993)). Under RCW 34.05.570(3)(d), we can grant relief if the agency has misinterpreted or misapplied the law-questions we consider de novo. Honesty in Envtl. Analysis and Legislation (HEAL) v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 96 Wash.App. 522, 526, 979 P.2d 864 (1999). Generally we give deference to an agency's interpretation of the law if it has expertise in dealing with the issue. HEAL, 96 Wash. App. at 526, 979 P.2d 864. We can also grant *768 relief from a Board decision if substantial evidence does not support it. RCW 34.05.570(3)(e). Substantial evidence is evidence sufficient to persuade a fair-minded person that the Board's order is correct. HEAL, 96 Wash.App. at 526, 979 P.2d 864. The party challenging the agency action bears the burden of showing that the action is invalid. RCW 34.05.570(1)(a). Here, the County bears the burden of demonstrating that the Board's decision was invalid. But because the legislature has clearly stated its intent to give counties considerable discretion in land use planning under the GMA, we give no deference to a "board's ruling that fails to apply this `more deferential standard of review' to a county's action." Quadrant Corp. v. State Growth Mgmt. Hearings Bd., 154 Wash.2d 224, 110 P.3d 1132, 1139 (2005).

III. Preexisting Agricultural Uses
¶ 13 PPF argues that the GMA requires the County to regulate preexisting agricultural uses in critical areas. The County disagrees. No court has decided whether the GMA allows reasonable regulation of preexisting agricultural uses located in designated critical areas.
¶ 14 Under the GMA, cities and counties with certain populations and rates of growth must adopt development regulations "to assure the conservation of agricultural, forest, and mineral resource lands." RCW 36.70A.060(1). Regulations adopted under subsection (1) "may not prohibit uses legally existing on any parcel prior to their adoption." RCW 36.70A.060(1). The GMA also requires all counties to adopt development regulations for critical areas. RCW 36.70A.060(2). "Critical areas" include (a) wetlands, (b) areas with a critical recharging effect on aquifers used for potable water, (c) fish and wildlife habitat conservation areas, (d) frequently flooded areas, and (e) geologically hazardous areas. RCW 36.70A.030(5). Counties must "include the best available science" when they develop their critical areas regulations and give special consideration to "conservation or protection measures necessary to preserve or enhance anadromous fisheries." RCW 36.70A.172(1). When adopting development regulations, counties must balance numerous GMA goals. RCW 36.70A.020. One of these goals is to "[m]aintain and enhance natural resource-based industries, including productive... agricultural ... industries [and][e]ncourage the conservation of ... productive agricultural lands." RCW 36.70A.020(8).
¶ 15 Unlike RCW 36.70A.060(1), subsection (2) is silent on whether it applies to preexisting uses. PPF argues that this demonstrates the legislature's intent that critical areas regulations apply to preexisting uses because it would have written in an exemption, as it did subsection (1), had it intended otherwise.
¶ 16 Our primary goal in interpreting a statute is to determine and give effect to the legislature's intent. King County v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 142 Wash.2d 543, 555, 14 P.3d 133 (2000) (quoting Nat'l Elec. Contractors Ass'n v. Riveland, 138 Wash.2d 9, 19, 978 P.2d 481 (1999)). We begin with the statute's plain language and ordinary meaning. King County, 142 Wash.2d at 555, 14 P.3d 133. And we interpret all the statutory provisions and their relation to each other to determine intent. Skagit Surveyors and Eng'rs, LLC v. Friends of Skagit County, 135 Wash.2d 542, 564, 958 P.2d 962 (1998) (citation omitted).
¶ 17 In passing the GMA, the State did not require all counties to adopt development regulations governing natural resource lands under RCW 36.70A.060(1). But it did require all counties, regardless of size and population, to adopt critical areas development regulations under RCW 36.70A.060(2). And RCW 36.70A.060(2) does not contain section (1)'s exemption for preexisting uses.[5]
*769 ¶ 18 Still, section (2) specifies development regulations, suggesting that the County must adopt regulations that concern only development proposals, necessarily a prospective concept. But section .030 defines "Development regulations" and "regulation" as "controls placed on development or land use activities." And, section .172 requires counties and cities to use the best available science in "developing policies and development regulations to protect the functions and values of critical areas." Thus, the GMA defines "development regulations" more broadly than simply future development regulations; it includes controls placed on land use activities. RCW 36.70A.030. And in protecting critical areas, counties and cities must use the best available science to promulgate not just development regulations, but policies intended to protect critical areas. RCW 36.70A.172. With this language, the legislature signaled its intent that the counties regulate critical areas, including existing uses, to advance the GMA's goals. RCW 36.70A.020.
¶ 19 As we have discussed, we generally give considerable deference to a Board's interpretation of statutes with which it regularly deals. Ferry County v. Concerned Friends of Ferry County, 121 Wash.App. 850, 856, 90 P.3d 698 (2004), review granted in part by 153 Wash.2d 1016, 106 P.3d 243 (2005). The western and eastern Washington Boards have both interpreted the GMA to allow regulation of preexisting agricultural uses in critical areas. See, e.g., Friends of Skagit County v. Skagit County, WWGMHB No. 96-2-0025, Final Decision and Order (Jan. 3, 1997), 1997 WL 8935 at 7; Larson Beach Neighbors v. Stevens County, EWGMHB No. 03-1-0003, Final Decision and Order (Feb. 10, 2004), 2004 WL 3404211 at *14.
¶ 20 PPF argues that the only published decision addressing an agricultural exemption, Whidbey Envtl. Action Network (WEAN) v. Island County, 122 Wash.App. 156, 181-82, 93 P.3d 885 (2004), review denied, 153 Wash.2d 1025, 110 P.3d 756 (2005),[6] necessarily implies that the GMA's mandate to protect critical areas applies to preexisting agricultural uses.
¶ 21 In WEAN, Island County adopted an agricultural exemption to its CAO for "`[e]xisting and on-going agricultural activities when undertaken pursuant to best management practices to minimize impacts to critical areas.'" WEAN, 122 Wash.App. at 182, 93 P.3d 885 (quoting I.C.C. 17.02.107(E)(1) (now codified at 17.02.040(E)(1))). The Board ruled that this exemption complied with the GMA as to land zoned rural agricultural. But it ruled that the County had inappropriately balanced non-designated agricultural uses against critical area protections by applying the agricultural activities exemption to land in the general rural zoning classification. The court affirmed the Board on a different basis, holding that the County had failed to produce evidence that there was a need to extend the exemption to more than just designated agricultural lands. WEAN, 122 Wash.App. at 183, 93 P.3d 885. Although WEAN did not consider the question before this court, it did not disapprove of regulating preexisting agriculture in critical areas.
¶ 22 We conclude that the plain language of chapter 36.70A demonstrates the legislature's intent that GMA counties and cities exercise some measure of control over preexisting uses in critical areas. Reading a broad exemption into critical areas regulation for preexisting uses would frustrate, not further, the legislature's intent.

IV. The Board's Decision
¶ 23 Clallam sought to exercise such control by exempting certain agriculture from its critical areas ordinance. But the Board invalidated the exemption, finding that:
[A]n important aspect of [the exemption] is that it is not limited to designated [agricultural resource land]. The exemption allows *770 any "agricultural activity" lawfully operated prior to the effective date of the ordinance. While presumably the entire 7,500 acres of designated ARL would qualify, so would potentially thousands of other acres. The County has no way of knowing the extent of the exemption's coverage, particularly given the lack of definition of "agricultural activities."
Administrative Record (AR), Index 9 at 10.
¶ 24 The Board was particularly concerned that "adopting a process that involves reduction of CA [critical areas] protections for lots as small as 1 acre is not a proper, nor allowable, balancing of GMA goals." AR, Index 30 at 10.
¶ 25 The Board may have been at least partially mistaken, however. As of May 2001, the County had identified 6,995 acres of agricultural resource land and 21,753 acres of chapter 84.34 RCW qualified land. The Board's record also included a transcript of a Clallam County Board of Commissioners' work session in which a planning biologist estimated that even less land (about 15,000 or 16,000 acres) would qualify in 2002.

V. Chapter 84.34 RCW
¶ 26 The County argues that limiting the agriculture exemption to chapter 84.34 RCW qualified land is consistent with the GMA's goals of maintaining natural resource industries, retaining open space, and preserving historically significant lands. See RCW 36.70A.020; RCW 84.34.010. RCW 84.34.010 provides:
The legislature hereby declares that it is in the best interest of the state to maintain, preserve, conserve and otherwise continue in existence adequate open space lands for the production of food .... The legislature further declares that assessment practices must be so designed as to permit the continued availability of open space lands for these purposes.
¶ 27 The purpose of chapter 84.34 RCW is "to encourage owners to retain their land for farm use and to resist the trend to sell agricultural land for urban subdivision." Van Buren v. Miller, 22 Wash.App. 836, 837, 592 P.2d 671 (1979). The statute recognizes:[7]
that if farm land adjacent to a city is assessed at its highest and best use upon comparable sales of adjacent farm land which is being used for urban purposes, the assessed value would be grossly disproportionate to the use. Thus, as to land which is in open spaces, the assessment is to be reached considering not comparable sales of similar land to real estate developers, but rather by comparable farm leases made by other farmers of their land.
Van Buren, 22 Wash.App. at 837-38, 592 P.2d 671.
¶ 28 Under the GMA, counties must balance protecting the environment (including water quality) and maintaining natural resource industries including agriculture. See RCW 36.70A.020(8), (10). In 1997, the legislature replaced the preponderance of the evidence standard of review for local GMA regulations in RCW 36.70A.320(3) with the more deferential clearly erroneous standard. LAWS OF 1997, ch. 429, § 20. It did so "[i]n recognition of the broad range of discretion that may be exercised by counties ... consistent with the requirements of [the GMA]." RCW 36.70A.3201. And the legislature "intend[ed] for the boards to grant deference to counties and cities in how they plan for growth, consistent with the requirements and goals of [the GMA]." RCW 36.70A.3201. The "ultimate burden and responsibility for ... harmonizing the planning goals" of the GMA rests with each county. RCW 36.70A.3201.
¶ 29 The Board has apparently adopted a policy favoring exemptions to critical areas ordinances only for designated agricultural resource lands. Island County Citizens' *771 Growth Mgmt. Coalition v. Island County, WWGMHB No. 98-02-0023c, Compliance Hearing Order (Nov. 17, 2000), 2000 WL 1729640 at 6, and Final Decision and Order (June 2, 1999), 1999 WL 396745 at 32-33; Friends of Skagit County v. Skagit County, WWGMHB No. 96-2-0025, Compliance Hearing Order (Sept. 16, 1998), 1998 WL 637160, at 23. To the extent the Board decided that the County's exemption must be limited to designated resource lands, it erred. Such a policy runs counter to the GMA's emphasis on balancing the goals of preserving farm lands and protecting the environment and fish and wildlife  a balancing that the County is entitled to engage in with its local circumstances in mind; and a balancing to which the Board must give the County considerable deference. See Quadrant, 110 P.3d at 1139.
¶ 30 Moreover, the GMA specifically recognizes the importance of rural lands and rural character. RCW 36.70A.011. The legislature has found that in defining its rural element, a county should foster land use patterns that preserve rural lifestyle and provide opportunities for small-scale, rural-based employment and self-employment. RCW 36.70A.011. A county must include in its GMA plan a rural element containing land not designated agriculture, which rural element "shall permit rural development, forestry, and agriculture in rural areas." RCW 36.70A.070(5)(b). These policy statements show a legislative intent to foster both designated agriculture under RCW 36.70A.170 and rural agriculture that is not designated. We conclude that the County may balance the preservation of non-designated agriculture against preservation of the environment under critical areas regulation. Accordingly, the County may frame its critical areas exemption more broadly than to include just designated farm land.
¶ 31 This is not to say that the Board must approve the County's current exemption plan. If the County, to meet its local conditions, wants to exempt a number of small farms, it must then show that by using best available science it has tailored the exemption to reasonably ameliorate potential harm to the environment and fish and wildlife. And the regulations must specifically address any threatened harm peculiar to the number and size of farms exempted. If the Board finds that the County has not met this burden, on remand the County may either reduce the amount of exempt land or more strictly control the more broadly exempted land.
¶ 32 In conclusion, we hold that the Board correctly ruled that preexisting agricultural uses are not exempt from all critical areas regulation. The Board erred in ruling that the County may exempt only designated agricultural resource land from full critical areas regulation. The County may expand its exempt agricultural land to meet its local conditions. But the County must balance such expanded exemption with corresponding restrictions that take into account the specific harms threatened by the expanded class of farm lands. Because the Board has not yet addressed the County's BMP restrictions, we do not address the parties' arguments on this issue.
¶ 33 We affirm in part, reverse in part, and remand to the Board for further proceedings.
I concur: HOUGHTON, P.J.
BRIDGEWATER, J. (dissenting).
¶ 34 The majority holds that the Growth Management Act (GMA) permits the Growth Management Board (Board) to invalidate Clallam County's (County) preexisting agricultural uses exemption from the County's critical areas ordinance. I respectfully dissent because the Board has not been granted authority to mandate regulation of preexisting land uses in critical areas.

I. Standard of Review
¶ 35 The GMA grants specific jurisdiction to growth management hearings boards[8] to hear and determine only those petitions alleging that a governmental agency is not in compliance with the requirements of the *772 GMA. RCW 36.70A.280. The Board must base its determination exclusively on whether a local government is in compliance with the requirements of the GMA. Honesty in Envtl. Analysis and Legislation (HEAL) v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 96 Wash.App. 522, 527, 979 P.2d 864 (1999); See also Skagit Surveyors and Eng'rs, LLC v. Friends of Skagit County, 135 Wash.2d 542, 958 P.2d 962 (1998) (stating that RCW 36.70A.290(2) limits a board's authority to hear challenges to a particular development regulation or plan after the effective date of the GMA).
¶ 36 When a particular development regulation, comprehensive plan, or amendment is challenged under the GMA, the Board "shall find compliance unless it determines that the action by the state agency, county, or city is clearly erroneous in view of the entire record before the board and in light of the goals and requirements of [the GMA]." RCW 36.70A.320(3). An action rises to the "clearly erroneous" standard when the Board is "left with the firm and definite conviction that a mistake has been committed." RCW 36.70A.320(3); Whidbey Envtl. Action Network (WEAN) v. Island County, 122 Wash. App. 156, 163-64, 93 P.3d 885 (2004), review denied, 153 Wash.2d 1025, 110 P.3d 756 (quoting Dep't of Ecology v. Pub. Util. Dist. No. 1, 121 Wash.2d 179, 201, 849 P.2d 646 (1993), aff'd, 511 U.S. 700, 114 S.Ct. 1900, 128 L.Ed.2d 716 (1994)).
¶ 37 A party may appeal a board decision to superior court pursuant to the Administrative Procedures Act (APA).[9] On appeal, this court sits in the same position as the superior court, applying the standards of the APA to the record before the agency. WEAN, 122 Wash.App. at 164, 93 P.3d 885 (citing City of Redmond v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 136 Wash.2d 38, 45, 959 P.2d 1091 (1998)). The party challenging the Board's action bears the burden of showing the invalidity of the action. RCW 34.05.570(1)(a). Here, the County is challenging the Board's action; therefore, the County bears the burden of showing invalidity.
¶ 38 While we generally give deference to a board's interpretations of the statute, those interpretations are not binding. City of Redmond v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 116 Wash.App. 48, 54, 65 P.3d 337, review denied, 150 Wash.2d 1007, 77 P.3d 651 (2003). We may grant relief from a board decision when the decision is not supported by substantial evidence. RCW 34.05.570(3)(e). Substantial evidence is evidence sufficient to persuade a fair-minded person that a board's order is correct. HEAL, 96 Wash.App. at 526, 979 P.2d 864.

II. The Growth Management Hearings Boards Authority
¶ 39 The County argues that the GMA does not require local governments to regulate preexisting agricultural land uses in critical areas. The fact that the Board found the GMA to require regulation of preexisting agricultural land uses in critical areas raises the issue of whether the GMA grants authority to the Board to make such a finding.
¶ 40 The GMA grants the Board specific authority to determine whether county actions comply with the Act. Skagit Surveyors, 135 Wash.2d at 558-59, 958 P.2d 962. The Act requires cities and counties with specified rates of growth and certain populations to adopt development regulations "to assure the conservation of agricultural, forest, and mineral resource lands." RCW 36.70A.060(1). Subsection (1) further requires that the development regulations "may not prohibit uses legally existing on any parcel prior to their adoption." RCW 36.70A.060(1).
¶ 41 Additionally, the GMA requires all counties to adopt development regulations for critical areas. RCW 36.70A.060(2). Critical areas include "(a) [w]etlands; (b) areas with a critical recharging effect on aquifers used for potable water; (c) fish and wildlife conservation areas, (d) frequently flooded areas, and (e) geologically hazardous areas." RCW 36.70A.030(5). Counties are required to "include the best available science [BAS]" in developing critical areas regulations. RCW 36.70A.172(1). Counties are also required to balance numerous express GMA *773 goals in adopting development regulations. RCW 36.70A.172(1).
¶ 42 Neither RCW 36.70A.060, RCW 36.70A.172, nor any other provision of the GMA expressly mandates a county to regulate preexisting uses in critical areas. Thus, the Board has no express authority to require regulation of preexisting agricultural uses in critical areas.

A. Necessarily Implied Statutory Authority

¶ 43 Administrative agencies generally have implied authority that is reasonably necessary to carry out express authority granted by the legislature. Skagit Surveyors, 135 Wash.2d at 564, 958 P.2d 962 (citations omitted). "[W]here implied authority to grant or impose a particular remedy is not clearly set forth in the statutory language or its broad implication, the courts of this state have been reluctant to find such authority on the part of the agency." Skagit Surveyors, 135 Wash.2d at 565, 958 P.2d 962.
¶ 44 This court's interpretation of a statute is a question of law, reviewed de novo. King County v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 142 Wash.2d 543, 555, 14 P.3d 133 (2000). When interpreting a statute, our goal is to determine and give effect to the legislature's intent. King County, 142 Wash.2d at 555, 14 P.3d 133 (citing Nat'l Elec. Contractors Ass'n v. Riveland, 138 Wash.2d 9, 19, 978 P.2d 481 (1999)). To determine legislative intent, we look at the statute's plain language and ordinary meaning. King County, 142 Wash.2d at 555, 14 P.3d 133.
¶ 45 The majority concluded that the statutory framework of the GMA clearly demonstrates legislative intent to require counties to "exercise some measure of control over preexisting uses in critical areas." Majority at 9. Moreover, the majority concludes that interpreting a broad exemption into critical areas regulation for preexisting uses would frustrate legislative intent of the GMA. Majority at 9. Contrary to the majority's holding, however, the statutory framework of the GMA does not necessarily imply the Board has statutory authority to construe the Act to mandate regulation of preexisting agricultural land use in critical areas. Reading the GMA in such a way would frustrate the purpose and goals of the Act.
¶ 46 The underlying purpose of the GMA is to control urban sprawl and to ensure the private and public sectors cooperate in the creation of comprehensive land planning. Quadrant Corp. v. State Growth Mgmt. Hearings Bd., 119 Wash.App. 562, 578, 81 P.3d 918 (2003), rev'd on other grounds, 154 Wash.2d 224, 110 P.3d 1132 (2005). The regulation of preexisting uses would have little to no influence on uncontrolled expansion of urbanization into rural areas.
¶ 47 The GMA also expressly states goals that "are adopted to guide the development and adoption of comprehensive plans and development regulations ... and shall be used exclusively for the purpose of guiding the development of comprehensive plans and development regulations." RCW 36.70A.020. One of the goals of the GMA is to protect private property owners from discriminatory actions. RCW 36.70A.020(6).[10]
¶ 48 The record shows no grounds for the distinction between agricultural preexisting land uses and other preexisting land uses. Therefore, the Board's apparent intent to regulate only preexisting agricultural uses in critical areas and not other preexisting land uses is discriminatory and thus contrary to an express goal of the GMA. See RCW 36.70A.020(6). Moreover, if the GMA is read to include all preexisting uses in critical areas, every business, home, golf course, etc. would be required to abide by BAS. See RCW 36.70A.172. BAS could very well dictate no use whatsoever. Prohibiting private citizens from using private land would frustrate RCW 36.70A.020(6).
¶ 49 Furthermore, Washington state courts have declined to find that the GMA mandates regulation of preexisting agricultural land uses in critical areas. There is no published court opinion addressing the issue directly, *774 but in WEAN v. Island County, the court avoided the issue. WEAN, 122 Wash.App. 156, 93 P.3d 885.
¶ 50 In WEAN v. Island County, Division One of this court addressed the issue of whether Island County's agricultural exemption[11] to its Critical Area Ordinance (CAO) was overbroad. WEAN, 122 Wash.App. at 181, 93 P.3d 885. The Board found the exemption to comply with the GMA as to land zoned rural agriculture. WEAN, 122 Wash.App. at 182, 93 P.3d 885. But the Board also found that Island County had "inappropriately balanced `non-designated agricultural uses' against critical area protections by allowing the application of the exemption to agricultural activities." WEAN, 122 Wash.App. at 182, 93 P.3d 885.
¶ 51 The court did not address whether the exemption frustrated the critical area protection requirements of the GMA. Rather, the court affirmed on a different basis. The court held that Island County failed to produce evidence supporting the exemption was necessary to protect agricultural activity. The court reasoned that Island County failed to produce evidence showing it considered BAS in the development of the exemption. WEAN, 122 Wash.App. at 184, 93 P.3d 885. Thus, the court declined to address whether the Board correctly construed the GMA to regulate preexisting agriculture in existing areas.
¶ 52 Here, the issue is not whether Clallam County provided evidence to support the need for an exemption.[12] The issue is whether the GMA grants the Board the fundamental authority to mandate regulation of preexisting agricultural land use in critical areas. Because WEAN does not address the issue at hand, it has no persuasive authority for us. The argument of the County is most compelling that the intent of the GMA is to control and mitigate the negative impact of future growth and development, not preexisting, on-going activities.
¶ 53 In conclusion, reading the GMA to grant authority to the Board to mandate regulation of preexisting agricultural uses in critical areas frustrates both the purpose and goals of the Act. First, the regulation of preexisting agricultural land uses in critical areas would have minimal, if any, influence on uncontrolled expansion of urbanization into rural areas. Next, there is no reference in the GMA distinguishing between agricultural preexisting land uses and other preexisting land uses. Such a distinction, therefore, would be discriminatory and contrary to Goal Six of the Act. Further, regulation of all preexisting land uses would hinder private land use contrary to the goals of the GMA. Therefore, the GMA does not expressly or necessarily imply the Board's authority to mandate regulation of preexisting agricultural land uses in critical areas. I would affirm the trial court.
NOTES
[1] The GMA required counties and cities to designate agricultural resource lands, i.e., "[a]gricultural lands that are not already characterized by urban growth and that have long-term significance for the commercial production of food or other agricultural products." RCW 36.70A.170(1)(a); see also RCW 36.70A.060(1).
[2] See Clallam County Code 27.12.900(67)(a)-(e).
[3] PPF cites to a "January 2001" final order at "AR 6," but it appears to have confused this with the final order of October 26, 2001 at AR 9.
[4] Chapter 34.05 RCW.
[5] The original House bill did exempt existing uses from critical areas regulation. But the exemption was removed from the final bill. A legislative report explains that "The restriction is removed from the GMA that interim development regulations to protect natural resource lands and critical areas may not prohibit prior permitted uses. Interim development regulations to protect natural resource lands may not prohibit uses legally existing on any parcel prior to the adoption of the interim development regulations." H.R. 52-1025, 1st Spec. Sess., at 4 (1991). Thus, the legislature intended to prevent interim natural resource land regulations from prohibiting existing uses but not critical areas regulations.
[6] The parties cite to the previous opinion in this case, which appeared at 118 Wash.App. 567, 76 P.3d 1215, but that opinion was superseded on June 7, 2004, by this noted opinion. The original references to rural residential zoning were changed to general rural zoning.
[7] RCW 84.34.065 provides in relevant part:

The true and fair value of farm and agricultural land shall be determined by consideration of the earning or productive capacity of comparable lands from crops grown most typically in the area averaged over not less than five years, capitalized at indicative rates. The earning or productive capacity of farm and agricultural lands shall be the "net cash rental," capitalized at a "rate of interest" charged on long term loans secured by a mortgage on farm or agricultural land plus a component for property taxes.
[8] Pursuant to the GMA, there are three growth management hearings boards in Washington: (1) Western Washington board; (2) Central Puget Sound board; and (3) Eastern Washington board. RCW 36.70A.250.
[9] Chapter 34.05 RCW.
[10] RCW 36.70A.020(6) states: "Private property shall not be taken for public use without just compensation having been made. The property rights of landowners shall be protected from arbitrary and discriminatory actions."
[11] Island County's critical area ordinance (CAO) exempted "[e]xisting and on-going agriculture activities when undertaken pursuant to best management practices to minimize impacts to critical areas." WEAN, 122 Wash.App. at 181, 93 P.3d 885 (quoting ICC 17.02.107(E)(1)).
[12] Clallam County's exemption is distinguished from WEAN's exemption because Clallam provided evidence to support the exemption is necessary to protect local agricultural activity.